**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BENJAMIN GESKE and JAMIE DUPAW, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No.: 13-cv-7720 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| FEDERAL NATIONAL MORTGAGE ASS'N | ) | |
| a/k/a FNMA or FANNIE MAE et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs bring a three count action against Defendants Federal National Mortgage Association ("FNMA"), Seterus, Inc., and CitiMortgage, Inc. in connection with a wrongful foreclosure action that was filed against Plaintiffs. Plaintiffs assert a breach of contract claim against FNMA and CitiMortgage (Count I), a violation of the Illinois Consumer Fraud Act, 815 ILCS 505/2 against all Defendants (Count II), and violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* against Seterus (Count III). Defendant CitiMortgage moves to dismiss Count II. For the reasons that follow, its motion [47] is granted, and Count II is dismissed without prejudice.

**I.     Background[1]**

Plaintiffs Benjamin Geske and Jamie Dupaw, a husband and wife, entered into a residential mortgage loan in 2008. See [32], Am. Compl. ¶¶ 5, 12. In 2010, Defendant FNMA owned the loan and Defendant CitiMortgage was the servicer of the loan. *Id.* at ¶ 12. Plaintiffs were required to make monthly payments of $1,425. *Id.* In September 2010, Plaintiffs entered

---

[1] In reviewing the instant motion, the Court accepts as true the facts alleged in Plaintiffs' amended complaint and makes all reasonable inferences in their favor. See, *e.g.*, *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012).

into a private loan modification agreement that would bring them current on the loan; under the agreement, Plaintiffs made a down payment of $4,715 and reduced their monthly payments to $1,283. See *id.* at ¶¶ 13–15, 17. Plaintiffs made the down payment in reliance on FNMA and CitiMortgage's promise to grant them a loan modification. *Id.* at ¶ 16.

Shortly thereafter, CitiMortgage transferred its servicing obligations to Defendant Seterus, but allegedly failed to inform Seterus of the recent loan modification. See [32], Am. Compl. ¶¶ 18, 19. CitiMortgage instead informed Seterus that Plaintiffs were behind on their payments. See *id.* at ¶ 20. Plaintiffs allege on information and belief that CitiMortgage failed to properly credit their previous payments, including the large down payment that they made in furtherance of the loan modification. See *id.*

In November 2010, Seterus informed Plaintiffs that they were behind on their payments. See [32], Am. Compl. ¶ 22. In response, Plaintiffs repeatedly attempted to rectify the situation, and even requested that CitiMortgage and Seterus participate in a joint phone call. See *id.* at ¶¶ 23, 24. CitiMortgage refused to assist in any fashion, as it no longer was the servicer of the loan. See *id.* at ¶ 24. Seterus proceeded to treat Plaintiffs' loan as if it were in default by assessing various fees, placing insurance on the home even though Plaintiffs had their own coverage, and finally filing a foreclosure action in April 2011 in Illinois state court. See *id.* at ¶¶ 26–29, 35–37. The foreclosure was dismissed with prejudice on September 27, 2013, and the state court awarded attorneys' fees to Plaintiffs. *Id.* at ¶ 38.

Plaintiffs filed suit against Defendants on October 28, 2013. Plaintiffs seek compensatory and punitive damages for the emotional distress, humiliation, and embarrassment that they suffered while defending the wrongful foreclosure. See [32], Am. Compl. ¶¶ 42, 53. Plaintiffs also seek damages for the additional interest, late fees, and default charges that they

were charged as a result of their loan payments not being credited properly, reimbursement for postage, copying, and telephone expenses that they incurred while repeatedly contacting Defendants and providing them with documentation of their payments, and attorneys' fees for their defense of the foreclosure action. See *id.* at ¶ 53. In Count I, Plaintiffs allege that CitiMortgage and FNMA breached the mortgage and loan modification agreements that they entered by failing to honor the loan modification, failing to properly credit their payments, treating their loan as if it were in default, assessing fees, and wrongfully foreclosing. See *id.* at ¶¶ 44, 45. In Count II, Plaintiffs allege that those actions—as well as CitiMortgage's failure to provide their loan modification documents to Seterus, failure to respond to their request for assistance after the loan was transferred, and false reporting of Geske's loan to credit bureaus—constitute violations of the Illinois Consumer Fraud Act ("ICFA"). See *id.* at ¶ 50. Plaintiffs also contend that Defendants have engaged in a similar pattern of wrongful conduct with others. See *id.* at ¶ 52. Finally, Plaintiffs allege violations of the Fair Debt Collection Practices Act against Seterus. See *id.* at ¶¶ 55–60.

## II. Legal Standard

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint, not the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as true all factual allegations in Plaintiffs' complaint and draws all reasonable inferences in their favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp.*

3

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); cf. *Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole.").

**III. Discussion**

As discussed, Plaintiffs allege that Defendant CitiMortgage violated Section Two of the ICFA. This section makes unlawful:

> * * * unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act" * * * in the conduct of any trade or commerce[.]

815 ILCS 505/2. To state a claim, Plaintiffs must allege: "(1) a deceptive or unfair act or practice by [D]efendant; (2) [D]efendant's intent that [they] rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving

4

trade or commerce." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010). Defendant moves to dismiss, arguing that the claim is preempted, in part, by the Fair Credit Reporting Act ("FCRA"), is duplicative of Plaintiffs' breach of contract claim, and is inadequately pleaded.

With respect to the preemption issue, Defendant contends that the claim is preempted by the FCRA and must be dismissed to the extent that it is based on allegations of Defendant's inaccurate credit reporting activities. The FCRA regulates the duties of companies that provide consumer information to credit bureaus and preempts any state law that also attempts to do so. See 15 U.S.C. § 1681t(b)(1) ("No requirement or prohibition may be imposed under the laws of any State [ ] with respect to any subject matter regulated under * * * (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies[.]"); see also *Purcell v. Bank of America*, 659 F.3d 622, 623–26 (7th Cir. 2011). Plaintiffs agree that any damages stemming from credit reporting activities are preempted and that such allegations may be dismissed. See [39], Pls.' Resp. 9 n.2. The Court therefore grants Defendant's motion to the extent that Plaintiffs allege that they may recover for Defendant's alleged unlawful credit reporting activities.

The Court now turns to the remainder of the ICFA claim, which alleges damages that stem from a variety of other actions or omissions by CitiMortgage. Defendant contends that the claim must be dismissed because it is premised on an alleged breach of contract (as set forth in Count I) and does not contain sufficient allegations of unfair or deceptive practices. Defendant correctly observes that the ICFA "is 'not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy.'" *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011) (quoting *Zankle v. Queen Anne Landscaping*, 311 Ill. App. 3d 308, 312 (Ill. App. Ct. 2d Dist. 2000)). Rather, a valid ICFA claim requires that

5

Plaintiffs allege "unfair or deceptive conduct [that is] distinct from the alleged breach of a contractual promise," *id.* at 400, and which "involves more than the mere fact that a defendant promised something and then failed to do it," *Zankle*, 311 Ill. App. 3d at 312. See also *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 169 (Ill. 2005) ("A breach of contractual promise, without more, is not actionable under the Consumer Fraud Act.").

Here, most of the conduct that comprises Plaintiffs' ICFA claim indeed is predicated on breaches of the mortgage and loan modification agreements. Plaintiffs also allege, however, that CitiMortgage "fail[ed] to provide loan modification documents to Seterus [and] fail[ed] to respond to [P]laintiffs' requests for assistance after the loan was transferred to Seterus[.]" [32], Am. Compl. ¶ 50(c). This conduct is distinct from the contractual breaches set forth in Count I, as it "involves more than the mere fact that [D]efendant promised" to abide by the terms of the mortgage and loan modification agreements but failed to do so, see *Zankle*, 311 Ill. App. 3d at 312.

With that said, the ICFA only makes unlawful acts or practices that allegedly are unfair or deceptive and upon which the defendant intended that the plaintiff rely. See *Siegel*, 612 F.3d at 934–35; 815 ILCS 505/2. The plaintiff need not establish that the defendant intended to deceive him, but he must allege that the defendant "committed a deceptive or unfair act and intended that the plaintiff rely on that act." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 575 (7th Cir. 2012). Plaintiffs contend that Defendant's shortcomings—namely, Defendant's failure to give Seterus the loan modification paperwork and refusal to help Plaintiffs rectify the situation with Seterus after the loan was transferred—qualify as "unfair" acts and practices. See [32], Am. Compl. ¶ 50; [39], Pls.' Resp. 9. The Seventh Circuit has explained that "whether a practice is unfair depends on a case-by-case analysis," but that three criteria are relevant: (1) whether the

conduct "violate[s] public policy," (2) is "so oppressive that the consumer has little choice but to submit," and (3) whether the conduct "cause[s] consumers substantial injury." *Siegel*, 612 F.3d at 935 (citing *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417–18 (Ill. 2002)). A "bare assertion of unfairness without describing in what manner the [alleged acts] either violate public policy or are oppressive is insufficient to state a cause of action[.]" *Robinson*, 201 Ill. 2d at 421.

Here, the alleged circumstances surrounding Defendant's handling of the loan modification and the transfer of the loan to Seterus certainly indicate that Defendant made errors and was unresponsive to Plaintiffs' requests for help after Seterus began servicing the loan. Nevertheless, the allegations do not plausibly suggest "unfairness" within the meaning of the ICFA. Plaintiffs include no factual allegations that state or indicate that Defendant's failures violated public policy or rose to the level of oppressive or coercive conduct. See [32], Am. Compl. ¶¶ 18–28 (alleging that Plaintiffs made the loan modification down payment, but that CitiMortgage did not properly credit the payment, did not retransmit the loan modification documents to Seterus, and that Seterus filed a foreclosure action five months later). Although Plaintiffs allege injuries from having to defend a wrongful foreclosure action, it was Seterus, not CitiMortgage, that foreclosed even though Plaintiffs allegedly provided Seterus with proof of the executed loan modification. See *id.* at ¶¶ 25, 28. In addition, Plaintiffs have not alleged any facts that indicate that Defendant intended that Plaintiffs rely on its shortcomings. The only reliance allegation is that the down payment "[was] made * * * in reliance on defendants' promise to grant them a loan modification," *id.* at ¶ 16—an allegation that supports the breach of contract claim in Count I, but not an ICFA claim.

The only remaining allegation that arguably is distinct from Count I is the allegation that Defendant "induc[ed] [P]laintiffs to make a large payment on a discharged debt by promising to modify their mortgage, and then fail[ed] to promptly and properly credit the payment and/or properly implement the loan modification." [32], Am. Compl. ¶ 50(d). In their brief, Plaintiffs stand on this allegation and argue that alleging that Defendant "induced them to make a large payment on their loan by promising them a loan modification that was never implemented, * * * [which] was part of a pattern and practice of misconduct by [Defendant]" states a valid ICFA violation. See [39], Pls.' Resp. 6–7. The Court respectfully disagrees. This allegation is simply another way of stating Plaintiffs' breach of contract claim—in particular, that Defendant falsely promised to modify Plaintiffs' loan if they made the down payment, and that despite Plaintiffs' performance (*i.e.* the $4,715 payment), Defendant did not hold up its end of the bargain. As explained above, a recital of a breach of contract is not sufficient to state a violation of the ICFA. See *Greenberger*, 631 F.3d at 399 (affirming dismissal of ICFA claim alleging that GEICO "falsely promised to restore its insureds' vehicles to their preloss condition," because the allegations were "nothing more than restatements of the claimed breach of contract, albeit using the language of fraud"); *Kesten v. Ocwen Loan Serv., LLC*, 2012 WL 426933, at *7 (N.D. Ill. Feb. 9, 2012) (dismissing claim alleging that mortgage loan owner and servicer violated ICFA by failing to adjust interest rate, overcharging plaintiff, and misrepresenting interest rate because the ICFA "'should not apply to simple breach of contract claims.'") (quoting *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 233 (1995)). Count II therefore must be dismissed.

Plaintiffs attempt to bring their allegations within the scope of the ICFA because Defendant's conduct allegedly constitutes "a pattern of conduct which implicates consumer

protection concerns[.]" See [39], Pls.' Resp. at 7–8. Plaintiffs specifically identify paragraph 52 of the amended complaint, which states in relevant part:

> The conduct in this case is not isolated, and is part of a pattern and practice of wrongful conduct by defendants. Defendants are the subject of numerous suits alleging improper mortgage servicing conduct, and in particular unfair conduct in connection with loan modification. In addition, CitiMortgage's parent organization was the subject of an enforcement action by the United States and attorneys general of 49 states for loan modification abuses.

The Seventh Circuit recently rejected this type of argument—namely, that a breach of a contract qualifies as a violation of the ICFA by virtue of alleged similar breaches of contracts on a widespread basis. See *Greenberger*, 631 F.3d at 400. Otherwise put, Plaintiffs' allegation that Defendant has repeated its conduct with other consumers on a widespread basis does not save their ICFA claim here. See *id.* (affirming dismissal of ICFA claim alleging "a 'widespread' or 'systematic' breach of contract" because plaintiff merely alleged "a simple breach of contract multiplied over a prospective plaintiff class" as opposed to "any unfair or deceptive conduct distinct from the alleged breach").

Finally, Plaintiffs' reliance on *Wigod v. Wells Fargo Bank* is unpersuasive. *Wigod* also involved allegations of a defendant bank's wrongful refusal to grant a permanent mortgage loan modification. In *Wigod*, however, the Seventh Circuit reversed a district court's dismissal of an ICFA claim for reasons unrelated to the issue at hand here. *Wigod* involved the misapplication of the "intent" element (or lack thereof) and the sufficiency of allegations of pecuniary losses. See 673 F.3d at 574–75. In any event, the ICFA claim in *Wigod* is distinct from Plaintiffs' claim, as Wigod included allegations of fraud, such as misrepresentations and the concealment of material facts by the defendant. See *id.* at 574. Here, it is precisely the absence of any allegations that describe deceptive or unfair acts or practices—apart from Defendant's failure to perform under the loan modification agreement—that renders Plaintiffs' allegations insufficient.

9

See, *e.g.*, *Avery*, 216 Ill. 2d at 169 ("A breach of contractual promise, without more, is not actionable under the [ICFA].").

Although Plaintiffs argue in their response brief that Defendant "inducing them to make a large downpayment for a loan modification that was never actually implemented was deceptive," [39], Pls.' Resp. 9, there are no allegations in the amended complaint that plausibly suggest that offering the loan modification was fraudulent. As a preliminary matter, and as Plaintiffs admit in their brief, Plaintiffs do not actually allege that Defendant violated the ICFA by engaging in "deceptive" conduct (only "unfair" acts and practices). *Id.*; see also [32], Am. Compl. ¶ 50. Further, the allegations with respect to Defendant's offer of a loan modification do not suggest that Defendant made a misrepresentation—such as an intentional false statement or the intentional concealment of a material fact—to prompt Plaintiffs to make the down payment. Rather, looking at the complaint as a whole, the allegations indicate that Defendant simply breached the terms of the loan modification agreement by failing to properly implement the modification after receiving the down payment. See, *e.g.*, [32], Am. Compl. ¶¶ 20, 50(d) (alleging that Defendant did not properly credit the payments that Plaintiffs made, including the down payment that was made in furtherance of the loan modification agreement). Put another way, the only "unfair" acts and practices alleged in Plaintiffs' complaint relate to Defendant's failure to perform under the loan modification agreement and thus are fully encompassed within Count I.

## IV.  Conclusion

For the reasons stated above, Defendant CitiMortgage's motion to dismiss Count II of the amended complaint [47] is granted, and Count II is dismissed without prejudice. If Plaintiffs believe that they are able to revise their ICFA allegations to state a valid claim, they may file a

second amended complaint within 28 days of the date of this order (or any extension of that deadline that may be requested to accommodate the parties' settlement efforts [see 79]). The case remains set for status hearing in the district court on 5/14/2015 at 9:00 a.m.

Dated: March 25, 2015

                                                    Robert M. Dow, Jr.
                                                   United States District Judge