IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BENJAMIN GESKE and JAMIE DUPAW, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 13-cv-07720 |
| | ) | |
| v. | ) | Honorable Robert M. Dow, Jr. |
| | ) | Judge Presiding |
| FEDERAL NATIONAL MORTGAGE ASS'N, | ) | |
| a/k/a FNMA or FANNIE MAE; SETERUS, | ) | Honorable Daniel G. Martin |
| INC., f/k/a IBM LENDER PROCESS | ) | Magistrate Judge |
| SERVICES, INC.; CITIMORTGAGE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**FANNIE MAE DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO SECOND AMENDED COMPLAINT**

Defendants Federal National Mortgage Association a/k/a FNMA or Fannie Mae ("Fannie Mae") and Seterus, Inc. ("Seterus") (collectively, the "Fannie Mae Defendants"), by their counsel, answer and respond to Plaintiffs Benjamin Geske's and Jamie Dupaw's (collectively, "Plaintiffs") Second Amended Complaint ("SAC") as follows:

**Answers to Introductory Allegations**

1.     Plaintiffs bring this action to secure redress from unlawful, unfair, and deceptive credit and collection practices by Defendants. The wrongful conduct includes filing a foreclosure action against Plaintiffs when Plaintiffs were not in default on their home mortgage loan.

**ANSWER:** The Fannie Mae Defendants admit that Plaintiffs' SAC seeks damages and makes various allegations against all of the defendants, but deny that the Fannie Mae Defendants engaged in any violation of law or other wrongdoing, deny any and alleged liability to Plaintiffs, and deny that Plaintiffs are entitled to any relief. The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph concerning Defendant CitiMortgage, Inc. ("CitiMortgage").

### Answers to Jurisdiction and Venue Allegations

2.     Subject matter jurisdiction is confered by 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1332, & 1337 as the action arises under the laws of the United States. The Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367. Venue is proper in this District pursuant to 28 U.S.C. § 1391 as Plaintiffs reside in this District, Defendants transact business within this District, and a majority of the acts or omissions occurred in this district.

**ANSWER:**   The Fannie Mae Defendants admit only that this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367, but deny that this Court has subject matter jurisdiction under 15 U.S.C. § 1692k, 28 U.S.C. §§ 1332, or 1337.  The Fannie Mae Defendants do not contest venue in this action.

3.     The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

**ANSWER:** The Fannie Mae Defendants admit only that the Plaintiffs' SAC alleges an amount in controversy in excess of $75,000, but deny that the amount in controversy exceeds $75,000, deny that Fannie Mae Defendants engaged in any violation of law or other wrongdoing, deny any and alleged liability to Plaintiffs, and deny that Plaintiffs are entitled to any relief.  The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph.

4.     Plaintiffs and Defendants are of complete diversity of citizenship as set forth below.

**ANSWER:** The allegations contained in this Paragraph consist solely of legal conclusions rather than allegations of fact, and therefore no response is necessary.  To the extent that a response is necessary, the Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

**Answers to Allegations Regarding Parties**

5.        Plaintiffs Benjamin Geske and Jamie Dupaw (collectively "Plaintiffs") are husband and wife and Illinois citizens who reside at 142 Bloomfield Drive, Woodstock, IL 60098.

**ANSWER:**  The Fannie Mae Defendants lack knowledge or information sufficient to form a

belief as to the truth or falsity of the allegations contained in this Paragraph.

6.        Defendant Federal National Mortgage Association ("Fannie Mae") is a federally chartered corporation with principal offices in Washington, D.C. and regional offices at 1 South Wacker Drive, Suite 1500, Chicago, IL 60606. Fannie Mae is engaged in the business of funding, purchasing, and owning residential mortgage loans.

**ANSWER:**  Fannie Mae admits the allegations contained in this Paragraph.  Seterus lacks

knowledge or information sufficient to form a belief as to the truth or falsity of the allegations

contained in this Paragraph.

7.        Defendant CitiMortgage, Inc. ("CitiMortgage") is a New York corporation with its principal place of business located at 1000 Technology Drive, O'Fallon, MO 63368. CitiMortgage does business in Illinois. Its registered agent is CT Corporation System, 208 S. LaSalle Street, Suite 814, Chicago, IL 60604.

**ANSWER:**  The Fannie Mae Defendants lack knowledge or information sufficient to form a

belief as to the truth or falsity of the allegations contained in this Paragraph.

8.        CitiMortgage is engaged in the business of extending credit to consumers, debt collection, and servicing residential mortgage loans.

**ANSWER:**  The Fannie Mae Defendants lack knowledge or information sufficient to form a

belief as to the truth or falsity of the allegations contained in this Paragraph.

9.        Defendant Seterus, Inc. ("Seterus") is a Delaware corporation with principal offices located at 14523 SW Millikan Way, Suite 200, Beaverton, OR 97005. Seterus does business in Illinois. Its registered agent and office is CT Corporation System, 208 S. LaSalle Street, Suite 814, Chicago, IL 60604.  It was formerly known as IBM Lender Business Process Services, Inc. (Seterus and   IBM Lender Business Process Services, Inc. collectively referred to as "Seterus").

**ANSWER:**  Seterus admits the allegations contained in this Paragraph.  Fannie Mae lacks

knowledge or information sufficient to form a belief as to the truth or falsity of the allegations

contained in this Paragraph.

10.     Seterus is engaged in the business of servicing residential mortgage loans and debt collection. It claims to be one of the nation's leading specialty loan servicing companies. *See* https://www.seterus.com.

**ANSWER:**  Seterus admits the allegations contained in this Paragraph.  Fannie Mae lacks

knowledge or information sufficient to form a belief as to the truth or falsity of the allegations

contained in this Paragraph.

11.     Many of the loans with respect to which Seterus acquires servicing are allegedly delinquent or in default at the time Seterus begins servicing. Plaintiffs' loan was one such loan.

**ANSWER:** The Fannie Mae Defendants admit only that Seterus is the mortgage loan servicer of

a loan extended by CitiMortgage to Plaintiff Benjamin Geske in the principal amount of

$254,479.00 ("Subject Loan") which is secured by a mortgage on the real estate commonly

known as 142 Bloomfield Drive in Woodstock, Illinois ("Subject Property").  Fannie Mae lacks

knowledge or information sufficient to form a belief as to the truth or falsity of the remaining

allegations contained in this Paragraph.  Seterus admits it has in the past acquired the servicing

rights relating to certain specific loans that are delinquent at the time of acquisition, but

otherwise denies the allegations contained in this Paragraph.

**Answers to Purported Factual Allegations**

12.     On March 28, 2008, Plaintiffs obtained a mortgage loan secured by their home in Woodstock, IL. Both Plaintiffs executed the mortgage. Plaintiff Benjamin Geske was the only signatory on the promissory note and remains liable for the debt. The note carried a fixed interest rate and required monthly payments of $1,425.01 for principal and interest. *See* Exhibit A attached hereto is the note; *see also* Exhibit B attached hereto is the mortgage.

**ANSWER:** The Fannie Mae Defendants admit the allegations contained in this Paragraph to the

extent that they are consistent with the terms of the mortgage securing the Subject Loan and the

note evidencing the Subject Loan. The Fannie Mae Defendants admit that what appear to be

copies of the note evidencing the Subject Loan and the mortgage securing the Subject Loan to

the Subject Property are attached to the Complaint as Exhibits A and B, respectively. The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph.

13. The mortgage loan also included an escrow account for taxes and insurance. The total monthly payment inclusive of principal, interest, and escrow was approximately $1,950.00.

**ANSWER:** The Fannie Mae Defendants admit only the allegations contained in this Paragraph to the extent that they are consistent with the terms of the Subject Loan, but otherwise deny the allegations contained in this Paragraph.

14. In 2010, Plaintiffs mortgage was owned by Fannie Mae and serviced by CitiMortgage.

**ANSWER:** The Fannie Mae Defendants admit that Fannie Mae was the owner of the Subject Loan in 2010, that CitiMortgage was the mortgage loan service provider prior to November 1, 2010. On November 1, 2010 servicing of the Subject Loan was transferred to Seterus. The Fannie Mae Defendants deny the remaining allegations contained in this Paragraph.

15. At that time, Plaintiffs suffered a loss of family income and defaulted on their monthly payments. Plaintiffs applied for assistance under the Federal Making Home Affordable Program ("HAMP") with CitiMortgage to cure the default and resume monthly payments.

**ANSWER:** The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of whether Plaintiffs suffered a loss of family income and applied for assistance under HAMP with CitiMortgage and therefore no response is required.

16. After a prolonged application process and a lengthy trial HAMP loan modification that was eventually denied, Plaintiffs were eventually informed that they qualified for a private "in-house" loan modification from CitiMortgage and Fannie Mae.

**ANSWER:** The Fannie Mae Defendants are unable to discern what is meant by "prolonged application process" and "private 'in-house loan modification," but attempting to respond, the Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth

or falsity of whether Plaintiffs went through a prolonged application process, and a lengthy trial HAMP loan modification that was eventually denied. The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to whether Plaintiffs were told by CitiMortgage that they qualified for a private mortgage modification, but deny that Fannie Mae authorized or accepted any loan modification as to the Subject Loan.

17.     On August 29, 2010, CitiMortgage approved Plaintiffs for a loan modification with the following terms:

        a) New Principal Balance: $265,346.78;

        b) New Interest Rate: 2%;

        c) Down Payment of $4,715.12 due September 29, 2010; and

        d) Monthly Payment of $1,283.10 (includes escrow) due November 1, 2010.

**ANSWER:** The Fannie Mae Defendants deny that Fannie Mae authorized or accepted the loan modification. The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph.

18.     On September 13, 2010, CitiMortgage sent Plaintiffs a loan modification contract and cover letter setting forth the terms described above (collectively the "loan modification"). *See* Exhibit C attached hereto is the cover letter; *see also* Exhibit D attached hereto is Plaintiffs' copy of the loan modification contract.

**ANSWER:** The Fannie Mae Defendants admit only that what appears to be a communication from CitiMortgage is attached to the SAC as Exhibit C and that what appears to be an unexecuted copy of a "Loan Modification Agreement" from CitiMortgage (the "Alleged Loan Modification") is attached to the SAC as Exhibit D, but the Fannie Mae Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

19.     The loan modification cover letter specifically instructed Plaintiffs as follows:

Take advantage of your Modification and reduce your monthly payment. Please make sure that you return 1 set of signed and notarized documents and down payment of **$4,715.12** ($1,283.10 - *10/01/10* payment plus 2 TPP payments @$1,716.01 x 2 = $3,432.02) in the Pre-Paid UPS return envelope that has been provided for you by **09/29/10.** Down Payment must be certified funds, cashier's check, money order, Western Union or call your underwriter to do a Speedpay by telephone. After your documents are received back in the office, your next payment will be due: **11/01/10** in the amount of $1,283.10. Do NOT take the UPS envelope to the post office. Deliver directly to UPS or a UPS drop-box. You can also call 800-PICK-UPS to schedule a pick-up from your home.

*Id.*

**ANSWER:** The Fannie Mae Defendants deny that Fannie Mae authorized or accepted the Alleged Loan Modification, but admit only that the allegations contained in this Paragraph to the extent that they are consistent with the alleged communication from CitiMortgage attached as Exhibit C to the SAC, but the Fannie Mae Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

20. Under the loan modification, Plaintiffs were required to make a large down payment of $4,715.12 by September 29, 2010. *Id.* The down payment was for two TPP [trial payment plan] payments and the October 2010 monthly payment. *Id.* The next required payment was for the November 2010 monthly payment in the amount of $1,283.10. *Id.* Each month thereafter, the Plaintiffs had monthly payment obligations (inclusive of escrow) in the amount of $1,283.10. *Id.*

**ANSWER:** The Fannie Mae Defendants deny that Fannie Mae authorized or accepted the Alleged Loan Modification, and the Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

21. Plaintiffs agreed to the terms of CitiMortgage's loan modification offer and signed and notarized the loan modification documents as instructed prior to the September 29, 2010 due date. Plaintiffs returned the executed documents to CitiMortgage using the UPS envelope provided by CitiMortgage with UPS Next Day Air tracking number 1Z51E9068497126892.

**ANSWER:** The Fannie Mae Defendants deny that Fannie Mae authorized or accepted the Alleged Loan Modification, but lack knowledge or information sufficient to form a belief as to

the truth or falsity of the remaining allegations contained in this Paragraph.

22.     Prior to September 29, 2010, Plaintiffs also made the $4,715.12 down payment via cashier's check, in reliance upon Defendants' promise to grant and honor the loan modification.

**ANSWER:** The Fannie Mae Defendants deny that Fannie Mae authorized or accepted the

Alleged Loan Modification, but lack knowledge or information sufficient to form a belief as to

the truth or falsity of the remaining allegations contained in this Paragraph.

23.     On September 27, 2010, CitiMortgage received the signed and notarized loan modification via UPS. CitiMortgage forwarded the signed loan modification to its lockbox and assigned it UPS tracking number 1Z2706880193422805. CitiMortgage also entered a notation into its system of record stating, "docs were signed on 9/25--LM1SD 9/27/10."

**ANSWER:** The Fannie Mae Defendants deny that Fannie Mae authorized or accepted the

Alleged Loan Modification, but lack knowledge or information sufficient to form a belief as to

the truth or falsity of the remaining allegations contained in this Paragraph.

24.     On September 28, 2010, CitiMortgage sent the loan modification documents to its booking department and closing department. CitiMortgage recorded the loan modification into its system of record as received. The loan was modified. The loan modification superseded the terms of the original loan and became the operative contract.

**ANSWER:** The Fannie Mae Defendants deny that Fannie Mae authorized or accepted the

Alleged Loan Modification, but lack knowledge or information sufficient to form a belief as to

the truth or falsity of the remaining allegations contained in this Paragraph.

25.     On September 29, 2010, Plaintiff Ben Geske called CitiMortgage to check whether CitiMortgage had received the signed loan modification and the cashier's check. CitiMortgage confirmed receipt of both. CitiMortgage also advised Ben that the loan was modified.

**ANSWER:** The Fannie Mae Defendants deny that Fannie Mae authorized or accepted the

Alleged Loan Modification, but lack knowledge or information sufficient to form a belief as to

the truth or falsity of the remaining allegations contained in this Paragraph.

26.     On September 30, 2010, CitiMortgage posted Plaintiffs' $4,715.12 down payment

to Plaintiffs' account.

**ANSWER:** The Fannie Mae Defendants deny that Fannie Mae authorized or accepted the Alleged Loan Modification, but lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph.

27.     On October 1, 2010, and unbeknownst to Plaintiffs at the time, CitiMortgage deducted two payments of $1,944.20 (the monthly payment for the original loan) from Plaintiffs' $4,715.12 down payment and applied them to Plaintiffs' account as if the loan was not modified.

**ANSWER:** The Fannie Mae Defendants deny that Fannie Mae authorized or accepted the Alleged Loan Modification, but lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph.

28.     Shortly after the modification was in place, CitiMortgage informed Plantiffs that the servicing rights on Plaintiffs' account were transferring to Seterus effective November 1, 2010.

**ANSWER:** The Fannie Mae Defendants deny that Fannie Mae authorized or accepted the Alleged Loan Modification.  The Fannie Mae Defendants admit that servicing of the Subject Loan was transferred from CitiMortgage to Seterus on or about November 1, 2010, but lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph.

29.     After being notified of the forthcoming transfer, on October 18, 2010, Plaintiff Ben Geske called CitiMortgage to confirm that CitiMortgage would inform Seterus of the loan modification contract. CitiMortgage advised that it would send Seterus the loan modification documentation and records.

**ANSWER:** The Fannie Mae Defendants deny that Fannie Mae authorized or accepted the Alleged Loan Modification, but lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph.

30.     Even though the loan modification had brought Plaintiffs' account current, unbeknownst to Plaintiffs, CitiMortgage charged Plaintiffs' account $213.75 in late fees on October 31, 2010 – one day before the transfer – and deducted that amount from Plaintiffs'

down payment as if no loan modification was in place.

**ANSWER:** The Fannie Mae Defendants deny that Fannie Mae authorized or accepted the Alleged Loan Modification, but lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph.

31.     On November 1, 2010, unbeknownst to Plaintiffs, when CitiMortgage transferred servicing rights, it did not inform Seterus of the existing loan modification as promised. Instead, CitiMortgage simply took Plaintiffs' $4,715.12 down payment for its own profit, never actually implemented the loan modification, and then transferred Plaintiffs' account to Seterus as if the loan was still in default under the original terms.

**ANSWER:** Seterus affirmatively states that CitiMortgage informed Seterus that CitiMortgage did not accept the Alleged Loan Modification. The Fannie Mae Defendants deny that Fannie Mae authorized or accepted the Alleged Loan Modification, but lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph.

32.     On November 2, 2010, Plaintiffs called Seterus to confirm the status of their account and to make sure the loan modification was in place. During the call, Plaintiffs specifically advised Seterus that they had an existing loan modification with CitiMortgage prior to the transfer, that they had made the required down payment, and that they were required to make ongoing monthly payments in the amount of $1,283.10 (inclusive of escrow) under the loan modification.

**ANSWER:** Seterus affirmatively states that CitiMortgage informed Seterus that CitiMortgage did not accept the Alleged Loan Modification. The Fannie Mae Defendants deny that Fannie Mae authorized or accepted the Alleged Loan Modification. Seterus admits only that Plaintiffs placed a call to Seterus on or about November 1, 2010, but otherwise lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph. Fannie Mae lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph.

33.     Seterus advised Plaintiffs that since the transfer just occurred, it did not have the

required information uploaded into its system, but stated that it would honor any existing loan modification. Seterus directed Plaintiffs to call the following day to make payment.

**ANSWER:** Seterus affirmatively states that CitiMortgage informed Seterus that the Alleged Loan Modification was not accepted by CitiMortgage. The Fannie Mae Defendants deny that Fannie Mae authorized or accepted the Alleged Loan Modification. Seterus admits only that Plaintiffs placed a call to Seterus on or about November 1, 2010, but otherwise lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph. Fannie Mae lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph.

34.     The following day, on November 3, 2010, Plaintiffs called Seterus. Seterus specifically advised the Plaintiffs to make their November 2010 loan modification payment in the amount of $1,283.10 to Seterus and provided Plaintiffs a phone number to call where the payment could be made over the phone, called "SpeedPay."

**ANSWER:** Seterus affirmatively states that CitiMortgage informed Seterus that CitiMortgage did not accept the Alleged Loan Modification. The Fannie Mae Defendants deny that Fannie Mae authorized or accepted the Alleged Loan Modification. Seterus admits only that Plaintiffs placed a call to Seterus on or about November 3, 2010 and admit that Plaintiffs made a payment in the amount of $1,283.10 towards the Subject Loan on November 5, 2010, but otherwise lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph. Fannie Mae lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph.

35.     On November 3, 2010, Plaintiffs made their November 2010 loan modification payment to Seterus in the amount of $1,283.10 using SpeedPay. Plaintiffs received a payment confirmation number. The payment was deducted from Plaintiffs' bank account and Seterus charged Plaintiffs' account a $20.00 SpeedPay fee.

**ANSWER:** The Fannie Mae Defendants deny that Fannie Mae authorized or accepted the Alleged Loan Modification. The Fannie Mae Defendants admit only that Plaintiffs made

payment in the amount of $1,283.10 toward the Subject Loan on November 5, 2010. The Fannie

Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or

falsity of the remaining allegations contained in this Paragraph.

36.     On November 5, 2010, Seterus sent Plaintiffs a SpeedPay confirmation letter.

**ANSWER:** The Fannie Mae Defendants lack knowledge or information sufficient to form a

belief as to the truth or falsity of the remaining allegations contained in this Paragraph.

37.     On November 7, 2010, Seterus sent Plaintiffs a "Payment Schedule Letter" that
stated their next payment was due on December 1, 2010 for $1,944.20 – the monthly payment
amount due under the original loan. *See* Exhibit E attached hereto is the payment schedule.

**ANSWER:** Seterus admits only the allegations contained in this Paragraph to the extent that

they are consistent with the November 7, 2010 "Payment Schedule Letter" and admits that what

appears to be a copy of the November 7, 2010 "Payment Schedule Letter" is attached to the SAC

as Exhibit E, but Seterus otherwise denies the allegations contained in this Paragraph. Fannie

Mae admits only that what appears to be a copy of a November 7, 2010 "Payment Schedule

Letter" is attached to the SAC as Exhibit E, but Fannie Mae otherwise lacks knowledge or

information sufficient to form a belief as to the truth or falsity of the remaining allegations

contained in this Paragraph.

38.     On November 9, 2010, Seterus sent Plaintiffs a monthly mortgage statement. The
statement asserted that Plaintiffs owed over $16,000 in arrearages. This figure included late
charges, unpaid interest, "escrow overdraft," and property inspection fees. *See* Exhibit F attached
hereto is the first monthly statement Plaintiffs received from Seterus.

**ANSWER:** Seterus admits only that it sent Plaintiffs correspondence on or about November 10,

2010, but otherwise lacks knowledge or information sufficient to form a belief as to the truth or

falsity of the remaining allegations contained in this Paragraph. Fannie Mae lacks knowledge or

information sufficient to form a belief as to the truth or falsity of the allegations contained in this

Paragraph.

39.    Seterus represented to Plaintiffs that it would honor the loan modification *and* directed Plaintiffs to make their November payment in the amount of $1,283.10 under the loan modification, but the November 7, 2010 and November 9, 2010 correspondences did not acknowledge or honor the loan modification. *See* Exhibits E & F.

**ANSWER:** The Fannie Mae Defendants affirmatively state that Fannie Mae did not authorize or accept the Alleged Loan Modification. Seterus admits the allegations contained in this Paragraph to the extent that they are consistent with the November 7, 2010 correspondence and admits that Plaintiffs made a payment towards the Subject Loan in the amount of $1,283.10 on November 5, 2010, but Seterus otherwise lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph. Fannie Mae lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

40.    These communications suggested that Seterus was not honoring the loan modification internally, but instead, attempting to collect under the terms of the original loan. *Id.*

**ANSWER:** The Fannie Mae Defendants are unable to discern what is meant by "these communications" and "honoring the loan modification internally," but attempting to respond, The Fannie Mae Defendants affirmatively state that Fannie Mae did not authorize or accept the Alleged Loan Modification. In a further attempt to respond, Seterus denies the allegations contained in this Paragraph and Fannie Mae lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

41.    During November 2010, Plaintiffs repeatedly contacted Seterus to resolve any errors and move forward with the loan modification as agreed. Plaintiffs also wanted to clarify the December 2010 payment, since the November 7, 2010 and November 9, 2010 communications were demanding over $1,900.00 in monthly payments and over $16,000.00 in arrearages. *Id.*

**ANSWER:** The Fannie Mae Defendants affirmatively state that Fannie Mae did not authorize or accept the Alleged Loan Modification. Seterus admits only that Plaintiffs contacted Seterus in

November 2010 to discuss the Subject Loan and admits the allegations contained in this Paragraph to the extent they are consistent with the November 7, 2010 correspondence, but Seterus otherwise lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph. Fannie Mae lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

42.     Seterus provided no assistance and continued to make confusing and conflicting representations to Plaintiffs.

**ANSWER:** Seterus denies the allegations contained in this Paragraph. Fannie Mae lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

43.     During November 2010, Plaintiffs also repeatedly contacted CitiMortgage to demand that CitiMortgage transmit the modified loan account and the signed loan modification documents to Seterus. During each call, CitiMortgage's employees refused to assist Plaintiffs on the basis that the loan had been transferred to Seterus as of November 1, 2010.

**ANSWER:** The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

44.     CitiMortgage told Plaintiffs that they needed to deal with Seterus directly and refused to take any corrective action. Plaintiffs offered to set up a three-way call with Seterus as a simple means to resolve the situation. CitiMortgage declined every offer and refused to participate.

**ANSWER:** The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

45.     On November 22, 2010, Seterus advised Plaintiffs for the first time that it did not have a signed loan modification agreement; it had only an unsigned version in its records. Seterus further informed Plaintiffs that the loan modification was valid, but stated that Plaintiffs would need to re-sign and re-notarize the identical loan modification agreement from CitiMortgage, and then fax Seterus a copy of the signed document. Plaintiffs immediately signed and notarized the loan modification documents and faxed them to Seterus as instructed.

**ANSWER:** The Fannie Mae Defendants affirmatively state that Fannie Mae did not authorize or accept the Alleged Loan Modification. Seterus admits only that it communicated with the Plaintiffs on or about November 22, 2010, but Seterus otherwise lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph. Fannie Mae lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

46.     Plaintiffs called Seterus to confirm that the re-executed loan modification was received by Seterus. Even though Plaintiffs re-signed, re-notarized, and faxed the loan modification documents to Seterus at Seterus' direction, Seterus' scheme took a deceptive pivot. Now, Seterus claimed that it needed to receive the signed loan modification directly from CitiMortgage.

**ANSWER:** The Fannie Mae Defendants are unable to discern what is meant by "Seterus' scheme took a deceptive pivot," but attempting to respond, the Fannie Mae Defendants affirmatively state that Fannie Mae did not authorize or accept the Alleged Loan Modification. Seterus admits only that the Plaintiffs called Seterus to discuss the Alleged Loan Modification, but denies that it engaged in any "scheme" or "deceptive" acts. Seterus otherwise lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph. Fannie Mae lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

47.     Plaintiffs again called CitiMortgage to request that the signed documents be sent to Seterus. CitiMortgage would not assist Plaintiffs.

**ANSWER:** The Fannie Mae Defendants affirmatively state that Fannie Mae did not authorize or accept the Alleged Loan Modification. The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

48.     On December 1, 2010, Plaintiffs called Seterus to make their December 2010 loan

modification payment. Seterus directed Plaintiffs to make the monthly loan modification payment of $1,283.10 to Seterus via SpeedPay.

**ANSWER:** The Fannie Mae Defendants are unable to discern what is meant by "Seterus directed Plaintiffs," but attempting to respond, the Fannie Mae Defendants affirmatively state that Fannie Mae authorized or accepted the Alleged Loan Modification. Seterus admits only that it spoke with the Plaintiffs on December 1, 2010 and that Plaintiffs made a payment in the amount of $1,283.10 towards the Subject Loan on December 1, 2010. Seterus otherwise lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph. Fannie Mae lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

49. On December 1, 2010, Plaintiffs made their December 2010 monthly payment to Seterus in the amount of $1,283.10 using SpeedPay and received a confirmation number. At that time, Seterus informed Plaintiffs that the loan modification payments brought their account current.

**ANSWER:** The Fannie Mae Defendants are unable to discern what is meant by "brought their account current," but attempting to respond, the Fannie Mae Defendants affirmatively state that the Alleged Loan Modification was not authorized or accepted by Fannie Mae. Seterus admits only that it spoke with the Plaintiffs on December 1, 2010, that Plaintiffs made payment in the amount of $1,283.10 towards the Subject Loan, and that it provided Plaintiffs with a confirmation number. Seterus otherwise lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph. Fannie Mae lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

50. Plaintiffs continued to call Seterus each month from January 2011 through April 2011. Seterus would continue its practice of directing Plaintiffs to make the modified monthly payment of $1,283.10 using SpeedPay and claim the loan modification was in place. Plaintiffs received a confirmation number each time.

**ANSWER:** The Fannie Mae Defendants affirmatively state that Fannie Mae did not authorize or accept the Alleged Loan Modification. Seterus admits only that Plaintiffs made payments in the amount of $1,283.10 toward the Subject Loan on November 5, 2010, December 1, 2010, January 5, 2011, February 4, 2011, March 3, 2011, and April 4, 2011, respectively and admits that Plaintiffs called Seterus between January 2011 through April 2011 to discuss the Subject Loan, and that Seterus provided confirmation numbers to Plaintiffs, but Seterus otherwise lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph. Fannie Mae admits only that Plaintiffs made payments in the amount of $1,283.10 toward the Subject Loan on November 5, 2010, December 1, 2010, January 5, 2011, February 4, 2011, March 3, 2011, and April 4, 2011. Fannie Mae lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph.

51.     From November 2010 through April 2011, Plaintiffs made every monthly in the amount of $1,283.10 to Seterus as required under the loan modification. Seterus accepted every payment.

**ANSWER:** The Fannie Mae Defendants are unable to discern what is meant by "every monthly," and "accepted every payment," but attempting to respond, the Fannie Mae Defendants affirmatively state that Fannie Mae did not authorize or accept the Alleged Loan Modification. The Fannie Mae Defendants admit only that Plaintiffs made payments in the amount of $1,283.10 toward the Subject Loan on November 5, 2010, December 1, 2010, January 5, 2011, February 4, 2011, March 3, 2011, and April 4, 2011, respectively. The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph.

52.     However, Seterus continued to send Plaintiffs correspondence and monthly

statements that did not recognize the loan modification. Each correspondence was attempting to collect on the original "defaulted" loan and collect exorbitant amounts of "arrearages."

**ANSWER:** The Fannie Mae Defendants are unable to discern what is meant by "correspondence and monthly statements," "recognize," and "exorbitant amounts," but attempting to respond the Fannie Mae Defendants affirmatively state that Fannie Mae did not authorize or accept the Alleged Loan Modification. Seterus admits only that it sent communications to the Plaintiffs concerning the Subject Loan but otherwise denies the allegations contained in this Paragraph. Fannie Mae lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

53. Even though Seterus had advised Plaintiffs on multiple occasions that the loan modification was in place and that Plaintiffs' account was current, Seterus continued to charge Plaintiffs late fees and treat the loan as if it was in default in letters and statements to Plaintiff.

**ANSWER:** The Fannie Mae Defendants are unable to discern what is meant by "treat the loan as if it was in default" and "letters and statements," but attempting to respond the Fannie Mae Defendants affirmatively state that Fannie Mae did not authorize or accept the Alleged Loan Modification. Seterus admits only that it sent communications to the Plaintiffs concerning the Subject Loan but otherwise denies the allegations contained in this Paragraph. Fannie Mae lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

54. On March 4, 2011, Plaintiff Ben Geske called Seterus to check on the status of the loan modification based on the ongoing and conflicting communications from Seterus.

**ANSWER:** The Fannie Mae Defendants are unable to discern what is meant by "ongoing and conflicting communications," but attempting to respond the Fannie Mae Defendants affirmatively state that Fannie Mae did not authorize or accept the Alleged Loan Modification. Seterus admits that Plaintiffs called Seterus on March 4, 2011 concerning the Subject Loan, but

Seterus otherwise lacks knowledge or information sufficient to form a belief as to the truth or

falsity of the remaining allegations contained in this Paragraph. Fannie Mae lacks knowledge or

information sufficient to form a belief as to the truth or falsity of the allegations contained in this

Paragraph.

55. Seterus advised Ben, contradicting previous representations, that it would *not* honor the loan modification from CitiMortgage, but did not provide an explanation. Seterus' internal notes log states the loan modification would not be honored because it failed the "waterfall/NPV test." In the servicing industry, this means that honoring the existing loan modification would be less profitable compared to Seterus' profit that would result from foreclosure of Plaintiff's home.

**ANSWER:** The Fannie Mae Defendants are unable to discern what is meant by "contradicting

previous representations," "internal notes log," and otherwise, but attempting to respond, the

Fannie Mae Defendants affirmatively state that Fannie Mae did not authorize or accept the

Alleged Loan Modification. Seterus admits that Plaintiffs called Seterus on March 4, 2011, and

that Seterus informed Plaintiffs it would not honor the Alleged Loan Modification, and admits

that its servicing notes includes a that the Alleged Loan Modification "fail[ed] the waterfall/NPV

test" but Seterus otherwise lacks knowledge or information sufficient to form a belief as to the

truth or falsity of the remaining allegations contained in this Paragraph. Fannie Mae lacks

knowledge or information sufficient to form a belief as to the truth or falsity of the allegations

contained in this Paragraph.

56. Within 10 days, on March 14, 2011, Seterus referred the subject loan to foreclosure without any explanation to Plaintiffs. Seterus directed Plaintiffs to make, and then accepted, the March 2011 monthly payment in the amount of $1,283.10 two weeks prior.

**ANSWER:** The Fannie Mae Defendants are unable to discern what is meant by "referred the

Subject Loan to foreclosure without any explanation to Plaintiffs" and "Seterus directed

Plaintiffs," but attempting to respond, the Fannie Mae Defendants admit only that a Complaint to

Foreclose Mortgage was filed in the Circuit Court of the 22nd Judicial Circuit for McHenry

County – Woodstock, Illinois, bearing case number 11 CH 1005 ("Foreclosure Action") on or about April 19, 2011 and that Plaintiffs made payment in the amount of $1,283.10 toward the Subject Loan on March 3, 2011, but the Fannie Mae Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

57.     On April 19, 2011, without any explanation to Plaintiffs, Seterus, through Fannie Mae, filed a mortgage foreclosure lawsuit against Plaintiffs. Seterus directed Plaintiffs to make, and then accepted, the April 2011 monthly payment in the amount of $1,283.10 three weeks prior.

**ANSWER:** The Fannie Mae Defendants are unable to discern what is meant by "Seterus directed Plaintiffs," but attempting to respond, the Fannie Mae Defendants admit that Fannie Mae initiated the Foreclosure Action on April 19, 2011 with Seterus as servicer, and admit that Plaintiffs made a payment in the amount of $1,283.10 toward the Subject Loan on April 4, 2011, but the Fannie Mae Defendants otherwise deny the remaining allegations contained in this Paragraph.

58.     The foreclosure case was filed in McHenry County Circuit Court in the case known as *Federal National Mortgage Association (Fannie Mae) v. Benjamin Geske, et al.*, 2011 CH 1005 in front of the Honorable Judge Meyer. *See* Exhibit G attached hereto is the foreclose complaint.

**ANSWER:** The Fannie Mae Defendants admit the allegations contained in this Paragraph.

59.     The complaint alleged that Plaintiffs were in default for the monthly payments beginning in May 2010. *Id*. at ¶3(l). The statement was false. Additionally, the complaint did not include the loan modification. Seterus was attempting to foreclose upon the original note and mortgage and an alleged default thereunder. *Id*.

**ANSWER:** The Fannie Mae Defendants only admit the allegations to the extent they are consistent with the Complaint to Foreclose Mortgage filed in the Foreclosure Action, but otherwise deny the allegations contained in this Paragraph.

60.     Since CitiMortgage serviced Plaintiffs' account in May 2010, these false

statements originated with CitiMortgage and Fannie Mae and were carried out by Seterus and Fannie Mae.

**ANSWER:** The Fannie Mae Defendants are unable to discern what is meant by "these false statements," and "carried out" but attempting to respond, the Fannie Mae Defendants admit only that CitiMortgage serviced the Subject Loan in May of 2010, but to the extent that the allegations contained in this Paragraph are directed at the Fannie Mae Defendants, the Fannie Mae Defendants deny the remaining allegations contained in this Paragraph. To the extent that the remaining allegations contained in this Paragraph are directed at CitiMortgage, the Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph.

61. In addition to requesting foreclosure and sale of Plaintiffs' home, Seterus and Fannie Mae also requested a personal deficiency judgment against Plaintiff Ben Geske for the full amount on the original loan. *Id*. at ¶3(o).

**ANSWER:** The Fannie Mae Defendants admit only the allegations contained in this Paragraph to the extent they are consistent with the Complaint to Foreclose Mortgage filed in the Foreclosure Action, but otherwise deny the allegations contained in this Paragraph.

62. After the foreclosure was filed, Plaintiffs deposited their monthly payments under the loan modification into a special account.

**ANSWER:** The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

63. Throughout the foreclosure, Seterus continued to send Plaintiffs correspondence that ignored the loan modification, disregarded its previous representations, and grossly inflated reinstatement figures. Seterus continued to bill Plaintiffs under the original loan terms and assess illegal fees and charges every month as if the loan was never modified. *See* Exhibit H attached hereto is a January 16, 2013 correspondence.

**ANSWER:** The Fannie Mae Defendants are unable to discern what is meant by "correspondence," "disregarded previous representations," "grossly inflated reinstatement

figures" and "as if the loan was never modified," but attempting to respond, The Fannie Mae Defendants affirmatively state that Fannie Mae did not authorize or accept the Alleged Loan Modification. Seterus admits only that it provided Plaintiffs' counsel correspondence dated January 16, 2013, a copy of which appears to be attached to the Complaint as Exhibit H, pursuant to a court supervised settlement process in the Foreclosure Action and not as any sort of demand or as any sort of assertion of amounts actually due and owing from Plaintiffs. The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph.

64.     Plaintiffs hired attorneys to defend the state court foreclosure. Plaintiffs prevailed in the foreclosure case and had summary judgment entered in their favor on the basis that there was a valid and enforceable loan modification, under which Plaintiffs preformed, and that there was no actionable default in light of the loan modification. The case was ultimately dismissed with prejudice on September 27, 2013. *See* Exhibit I attached hereto is the dismissal order.

**ANSWER:** The Fannie Mae Defendants affirmatively state that Fannie Mae did not authorize or accept the Alleged Loan Modification. The Fannie Mae Defendants admit that Plaintiffs were represented by counsel in the Foreclosure Action, admit the Foreclosure Action was dismissed with prejudice on September 27, 2013, admit that what appears to be a copy of the order dated September 27, 2013, in the Foreclosure Action is attached to the Complaint as Exhibit I, and admit the remaining allegations contained in this Paragraph only to the extent consistent with the language contained in the September 27, 2013 Order, but otherwise deny the allegations contained in this Paragraph.

65.     Even though Seterus and Fannie Mae were defeated in the case, they continued to disregard Judge Meyer's final order and continued to disregard the loan modification. Seterus and Fannie Mae even continued to demand repayment of their own attorney's fees and costs – with a respect to a foreclosure case that they lost – on Plaintiffs' loan account.

**ANSWER:** The Fannie Mae Defendants are unable to discern what is meant by "defeated in the case," "Judge Meyer's final order," "disregard the loan modification" "continued to demand

repayment of their own attorneys' fees and costs, and "Plaintiffs' loan account," and accordingly lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

66.     Eventually, Plaintiffs' foreclosure counsel contacted Seterus' and Fannie Mae's foreclosure counsel to request reinstatement figure consistent with Judge Meyer's orders.

**ANSWER:** The Fannie Mae Defendants are unable to discern who is referred to as "Plaintiffs' foreclosure counsel," "Seterus' and Fannie Mae's foreclosure counsel" or discern what is meant by "reinstatement figure consistent with Judge Meyer's orders" and accordingly lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

67.     Seterus' and Fannie Mae's attorneys were unable to provide the information and advised Plaintiffs' counsel to contact Seterus directly to obtain the information. Seterus' and Fannie Mae's attorney specifically cited a breakdown in communication with Seterus and a lack of cooperation from his client.

**ANSWER:** The Fannie Mae Defendants are unable to discern who is referred to as "Seterus' and Fannie Mae's attorneys," "Plaintiffs' counsel" or discern what is meant by "the information," "a breakdown in communication," or "lack of cooperation," and accordingly lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

68.     Plaintiffs' counsel then contacted Seterus directly to request reinstatement figures consistent with Judge Meyer's orders. Notwithstanding the simplicity of the request, Seterus failed to respond to any inquiries or provide Plaintiffs' counsel any information.

**ANSWER:** The Fannie Mae Defendants are unable to discern who is referred to as "Plaintiffs' counsel" or discern what is meant by "reinstatement figures consistent with Judge Meyer's orders" and "inquiries" and accordingly lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

69.     Between October 29, 2012 and October 28, 2013, Seterus also communicated directly with Plaintiffs even though Seterus had actual knowledge they that they were represented by an attorney, and had noted in its own system of record that Plaintiffs were represented by counsel.

**ANSWER:** Seterus admits only that it communicated with Plaintiffs between October 29, 2012 and October 28, 2013, and to the extent that any communications were made to Plaintiffs after Seterus received notice of representation of counsel, these communications were the result of a bona fide error, made despite Seterus's processes and procedures in place to code a loan file for attorney representation when Seterus learns that one of its customers is represented by counsel. Fannie Mae lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

### a.    Answers to Purported Force-Placed Insurance Allegations

70.     Since November 2010, Seterus managed an escrow account for Plaintiffs' taxes and insurance. During the relevant time period, a standard hazard insurance policy was purchased from Genworth Mortgage Insurance at standard market rates, similar to those purchased by homeowners without escrow accounts.

**ANSWER:** The Fannie Mae Defendants are unable to discern what is meant by "relevant time period" or "standard market rates" or who purchased the "standard hazard insurance policy" from "Genworth Mortgage Insurance" but attempting to respond, Seterus admits only that it managed an escrow account relating to the Subject Loan, but Seterus otherwise lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph.  Fannie Mae lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

71.     However, Seterus also purchased "force-placed" insurance policies – a policy that is purchased by mortgage servicers if the borrower doesn't maintain adequate insurance.

**ANSWER:** The Fannie Mae Defendants are unable to discern what is meant by "force-placed," but attempting to respond, Seterus states that it obtained insurance through QBE First Insurance

Agency, Inc. for the Subject Property, but otherwise lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph. Fannie Mae lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

72.     A force-placed policy is more expensive than a standard policy and it protects only the collateral and Seterus' and Fannie Mae's interest in the property, with no benefit to Plaintiffs.

**ANSWER:** The Fannie Mae Defendants are unable to discern what is meant by "force-placed policy," "standard policy" and "no benefit to Plaintiffs," but attempting to respond, the Fannie Mae Defendants deny the allegations contained in this Paragraph.

73.     Seterus force-placed insurance on Plaintiffs' home in at least March 2012, May 2012, and March 2013. Seterus billed Plaintiffs' account between $500.00 to $1,300.00 each time for the force-placed insurance that was purchased from QBE First Insurance. *See* Exhibit J attached hereto is force-placed insurance through QBE First Insurance.

**ANSWER:** The Fannie Mae Defendants are unable to discern what is meant by "force-placed," but attempting to respond, Seterus affirmatively states that Seterus obtained insurance through QBE First Insurance Agency, Inc. for the Subject Property, and charged Plaintiffs for the insurance obtained through QBE and funds in the amount of $1,298.00 were received in March 2012, funds in the amount of $598.00 were received in May 2012 and funds in the amount of $698.00 were received in March 2013, but Seterus otherwise denies the allegations contained in this Paragraph. Fannie Mae lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

74.     At the same time that Seterus paid for force-placed insurance, Seterus continued to deduct and pay $106.03 from Plaintiffs' escrow account each month for the payment of their regular (non-force-placed) hazard insurance.

**ANSWER:** The Fannie Mae Defendants are unable to discern what is meant by "force-placed insurance" and "regular (non-force-placed) hazard insurance," but attempting to respond, the

Fannie Mae Defendants admit that Seterus charged Plaintiffs $106.03 from November 18, 2010 to January 13, 2012 for mortgage insurance, but otherwise lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph.

75.     Therefore, Seterus not only charged Plaintiffs' account $106.03 each month for their regular policy, but Seterus continued to charge Plaintiffs' account for the more expensive force-placed policies, thus, double charging Plaintiffs' account.

**ANSWER:** The Fannie Mae Defendants are unable to discern what is meant by "regular policy," " more expensive force-placed policies," and "double charging Plaintiffs' account," and accordingly, the Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph.

**b.     Answers to Allegations Concerning CitiMortgage and Seterus' Purported Conduct as Alleged Agents of Fannie Mae**

76.     All of the conduct of CitiMortgage and Seterus (the loan servicers) set forth herein was engaged in as authorized agents of Fannie Mae (the owner of the loan).

**ANSWER:** Fannie Mae denies that Seterus or CitiMortgage is or at any time was its agent, and otherwise denies the allegations contained in this Paragraph. Seterus denies the allegations contained in this Paragraph directed toward it, buts lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph.

77.     The authority conferred by Fannie Mae to CitiMortgage and Seterus included:

    i.     Determining the amounts due under loans;
    ii.    Declaring loans to be in default;
    iii.   Handling the loan account and communicating with borrowers;
    iv.    Resolving disputes by borrowers and correcting errors on loan accounts;
    v.     Instituting foreclosure proceedings; and
    vi.    Collecting and applying payments.

**ANSWER:** Fannie Mae denies the allegations contained in this Paragraph. Seterus denies the

allegations contained in this Paragraph directed toward it, buts lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph.

78.     It was against Fannie Mae Guidelines for CitiMortgage and Seterus to:

     i.    fail to maintain adequate and accurate accounting records and mortgage servicing records for Plaintiffs' mortgage loan;

    ii.    fail to properly maintain Plaintiffs' original loan modification documents; and

   iii.    fail to make corrections to Plaintiffs' account after repeated notice.

**ANSWER:** The Fannie Mae Defendants are unable to discern what is meant by "Fannie Mae Guidelines," and accordingly, lack knowledge and information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

### c.   Answers to Damages Allegations

79.     The Plaintiffs have suffered substantial damage from Defendants' conduct, including:

     i.    Physical illness and injury, including medical bills;
    ii.    Emotional distress, stress, and anxiety;
   iii.    Public humiliation and embarrassment. The wrongful foreclosure filing is public record which can be obtained by anybody who searches the court records, further harming Plaintiffs' reputation;

   iv.    Expenditure of money and time to defend the foreclosure and rectify Defendants' conduct; and

    v.    Additional interest, default charges, force placed insurance, and attorney's fees that have been wrongfully added to their loan balance.

**ANSWER:** The Fannie Mae Defendants are unable to discern what is meant by "Defendants' conduct," but attempting to respond, deny the allegations contained in this Paragraph as to them. The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph to the extent that they are directed at CitiMortgage.

80.     Throughout the four year scheme employed by Defendants, Plaintiff Jamie Geske experienced severe stress and anxiety. As a result, Jamie began to experience serious health issues that were brought on and exacerbated by the never-ending stress.

**ANSWER:**  The Fannie Mae Defendants are unable to discern what is meant by "four year scheme employed by Defendants," but attempting to respond, the Fannie Mae Defendants deny the allegations contained in this Paragraph.

81.     Jamie's health and well-being drastically deteriorated. She developed severe skin problems that her physician attached to stress and determined was stress induced. Jamie's medical records show a steady decline in her health during the relevant time period.

**ANSWER:**  The Fannie Mae Defendants are unable to discern what is meant by "the relevant time period," but attempting to respond, the Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

82.     In June 2011, Jamie required medical treatment for a skin condition. Her physicians believe the condition was brought on by severe stress and anxiety. This continued through 2014, when her dermatologist attributed the exacerbation of her skin conditions to stress.

**ANSWER:**  The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

83.     Additionally, Jamie has been diagnosed with stress-induced lupus.

**ANSWER:**  The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

84.     The stress caused by Defendants also led to severe strain on Plaintiffs' marriage which required marriage counseling.

**ANSWER:**   The Fannie Mae Defendants deny that any "severe strain on Plaintiffs' marriage which required marriage counseling" was the result of any act or omission on the part of the Fannie Mae Defendants.  The Fannie Mae Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this

Paragraph.

85.    All of Defendants' actions were the proximate cause of damages to Plaintiffs that include those set forth above, illegal fees, charges, interest, SpeedPay fees, living in a perpetual state of "default," loss of equity in their home, emotional distress, physical illness and injury, medical bills, pain and suffering, and the loss of funds that Defendants misapplied to Plaintiffs' account.

**ANSWER:**  To the extent that the allegations contained in this Paragraph are directed at the

Fannie Mae Defendants, the Fannie Mae Defendants deny the allegations contained in this

Paragraph.   To the extent that the allegations contained in this Paragraph are directed at

CitiMortgage, the Fannie Mae Defendants lack knowledge or information sufficient to form a

belief as to the truth or falsity of the allegations contained in this Paragraph.

**Answer to Count I**
**Alleged Breach of Contract Against All Defendants**

86.    Plaintiffs incorporates paragraphs 1 through 85 herein.

**ANSWER:** The Fannie Mae Defendants restate and incorporate by reference their answers and

responses to Paragraphs 1-85 as their answer and response to this Paragraph.

87.    Plaintiffs have a valid and enforceable loan modification contract with (a) Fannie Mae as the creditor/owner of the subject loan, (b) CitiMortgage because the loan modification was entered between CitiMortgage and Plaintiffs, and (c) Seterus as the assignee of CitiMortgage.

**ANSWER:** The allegations contained in this Paragraph consist solely of legal conclusions rather

than allegations of fact, and therefore no response is required.  To the extent that a response is

required, Fannie Mae denies that Seterus or CitiMortgage is or at any time was it agent. The

Fannie Mae Defendants deny that Fannie Mae authorized or accepted the Alleged Loan

Modification and otherwise deny the allegations contained in this Paragraph.

88.    CitiMortgage and Seterus are agents of Fannie Mae, and Fannie Mae is the principal. Therefore, Fannie Mae is liable for the acts and causes of action against CitiMortgage and Seterus.

**ANSWER:** The allegations contained in this Paragraph consist solely of legal conclusions rather than allegations of fact, and therefore no response is required. To the extent that a response is required, Fannie Mae denies that CitiMortgage or Seterus is or at any time was its agent and otherwise denies the allegations contained in this Paragraph. Seterus denies the allegations contained in this Paragraph directed toward it, buts lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph.

89. The Plaintiffs fully performed their duties under the loan modification contract by tendering all monthly payments and by complying with all of the other terms of the contract.

**ANSWER:** The Fannie Mae Defendants deny that Fannie Mae authorized or accepted the Alleged Loan Modification and otherwise deny the allegations contained in this Paragraph.

90. Defendants were required to honor the loan modification and properly credit payments received from Plaintiffs. The terms of Plaintiffs' loan modification require payments to be properly credited.

**ANSWER:** The allegations contained in this Paragraph consist solely of legal conclusions rather than allegations of fact, and therefore no response is required. To the extent that a response is required, the Fannie Mae Defendants deny that Fannie Mae authorized or accepted the Alleged Loan Modification and otherwise deny the allegations contained in this Paragraph.

91. However, CitiMortgage failed to properly credit Plaintiffs' account with the initial down payment on their loan modification, even though CitiMortgage accepted and cashed the payment.

**ANSWER:** The Fannie Mae Defendants deny that Fannie Mae authorized or accepted the Alleged Loan Modification. The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

92. Instead, CitiMortgage deducted two payments of $1,944.20 (the monthly payment from the original loan terms) from Plaintiffs' $4,715.12 down payment and applied them to Plaintiffs' account as if the loan was not modified. CitiMortgage then continued to treat the

account internally as if it was in default. Additionally, even though the loan modification brought Plaintiffs' account current, CitiMortgage charged Plaintiffs' account $213.75 in late fees on October 31, 2010 and deducted that amount from Plaintiffs' down payment – one day before the transfer to Seterus.

**ANSWER:** The Fannie Mae Defendants deny that Fannie Mae authorized or accepted the Alleged Loan Modification. The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

93.    Upon the servicing transfer to Seterus, Seterus continued to accept Plaintiffs' modified monthly payments of $1,283.10, but would not properly credit or apply Plaintiffs' payments to the loan account. Seterus continued to treat the account as if it was in default as if no loan modification existed, and then assessed wrongful fees and charges.

**ANSWER:** The Fannie Mae Defendants are unable to discern what is meant by "properly credit or apply" "treat the account," and "wrongful fees and charges," but attempting to respond, the Fannie Mae Defendants deny that Fannie Mae authorized or accepted the Alleged Loan Modification. The Fannie Mae Defendants admit only that Plaintiffs made payments in the amount of $1,283.10 toward the Subject Loan on November 5, 2010, December 1, 2010, January 5, 2011, February 4, 2011, March 3, 2011, and April 4, 2011, respectively.  The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph.

94.    Defendants breached the contract and the duty of good faith and fair dealing further by:

    i.    Failing to honor the modification;
    ii.   Misapplying or failing to properly account for Plaintiffs' monthly payments including the loan modification down payment;
    iii.  Treating Plaintiffs' loan as a loan in default when it was not in default;
    iv.   Adding wrongful fees and charges to Plaintiffs' loan account including late fees, fees for monthly property inspections, and force-placed insurance charges; and
    v.    Wrongfully foreclosing on a mortgage loan that was not in default.

**ANSWER:**   The allegations contained in this Paragraph consist solely of legal conclusions

rather than allegations of fact, and therefore no response is required. To the extent that a response is required, and to the extent that these allegations are directed against the Fannie Mae Defendants, the Fannie Mae Defendants deny that Fannie Mae authorized or accepted the Alleged Loan Modification, and the Fannie Mae Defendants deny the allegations contained in this Paragraph. The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph directed against CitiMortgage.

95. Plaintiffs suffered damages as set forth in paragraphs 79 through 85 above that were proximately caused by the conduct of the Defendants described herein.

**ANSWER:** To the extent that the allegations contained in this Paragraph are directed against the Fannie Mae Defendants, the Fannie Mae Defendants deny the allegations contained in this Paragraph. The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph directed against CitiMortgage.

WHEREFORE, the Fannie Mae Defendants deny any and all alleged liability in this matter, request that judgment be entered in their favor and against Plaintiffs, with costs assessed, and request that this Court grant such further and additional relief as it deems just and appropriate.

### Answer to Count II
### Alleged Violations of the Illinois Consumer Fraud Act Against All Defendants

96. Plaintiffs incorporate paragraphs 1 through 85 herein.

**ANSWER:** The Fannie Mae Defendants restate and incorporate by reference their answers and responses to Paragraphs 1-85 as their answer and response to this Paragraph.

97. Plaintiffs meet the ICFA definition of "consumer" and "person." *See* 810 ILCS 505/1.

**ANSWER:** The allegations contained in this Paragraph consist solely of legal conclusions rather than allegations of fact, and therefore no response is required.

98.     Defendants violated 815 ILCS 505/2 by employing unfair acts and practices and deceptive acts when dealing with Plaintiffs. The unfair and deceptive acts and practices complained of occurred in the course of conduct involving trade or commerce.

**ANSWER:** The Fannie Mae Defendants deny the allegations contained in this Paragraph as to them.  The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph directed against CitiMortgage.

99.     Aside from loan servicing errors, Defendants made outright unfair and deceptive misrepresentations to Plaintiffs as to the status of their loan account, the amounts owed, how payments would be applied, how Plaintiffs *should* act, and Defendants actual treatment of Plaintiffs' account internally in comparison to their representations to Plaintiffs.

**ANSWER:** The Fannie Mae Defendants deny the allegations contained in this Paragraph as to them.  The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph directed against CitiMortgage.

100.     It was unfair for Defendants to represent to Plaintiffs that the loan modification had been finalized and booked into their computer system, when neither of the Defendants ever actually implemented the loan modification internally.

**ANSWER:** The Fannie Mae Defendants deny that Fannie Mae authorized or accepted the Alleged Loan Modification.  Seterus denies the allegations contained in this Paragraph as to it. To the extent that the allegations contained in this Paragraph may be construed as being directed against Fannie Mae, Fannie Mae denies the allegations contained in this Paragraph. The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph directed against CitiMortgage.

101.     It was unfair and deceptive for Defendants to induce Plaintiffs – both orally and in writing – to make payments on the loan modification even though Defendants never intended to implement nor actually implemented the loan modification internally. Defendants then took Plaintiffs' money and applied it internally to a superseded account and associated fees.

**ANSWER:** The Fannie Mae Defendants deny that Fannie Mae authorized or accepted the Alleged Loan Modification. The Fannie Mae Defendants deny the allegations contained in this Paragraph as to them. The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph directed against CitiMortgage.

102. It was unfair and deceptive for Defendants to inform Plaintiffs that their loan was modified and current, when they never updated their system of record internally to reflect the terms of the loan modification.

**ANSWER:** The Fannie Mae Defendants deny that Fannie Mae authorized or accepted the Alleged Loan Modification. The Fannie Mae Defendants deny the allegations contained in this Paragraph as to them. The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph directed against CitiMortgage.

103. It was unfair and deceptive for CitiMortgage to inform Plaintiffs that the loan modification was booked in its system and final, yet fail to provide Seterus the modified loan account as promised upon the November 1, 2010 transfer.

**ANSWER:** The Fannie Mae Defendants deny that Fannie Mae authorized or accepted the Alleged Loan Modification. The Fannie Mae Defendants deny the allegations contained in this Paragraph as to them. The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph directed against CitiMortgage.

104. It was also unfair for CitiMortgage to later refuse to send Seterus the signed loan modification after Plaintiffs made repeated requests in the middle and end of November 2010. It was unfair for CitiMortgage to refuse to take part in a three way phone call with Plaintiffs and Seterus in November 2010 to address the transfer of the signed loan modification.

**ANSWER:** The Fannie Mae Defendants deny that Fannie Mae authorized or accepted the

Alleged Loan Modification. To the extent that the allegations contained in this Paragraph may be construed as directed against the Fannie Mae Defendants, the Fannie Mae Defendants deny the allegations contained in this Paragraph as to them. The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph directed against CitiMortgage.

105. It was unfair and deceptive for Seterus to inform Plaintiffs on November 22, 2010 that it would honor the loan modification if Plaintiffs re-signed and re-notarized the loan modification agreement, only to receive the re-signed modification and continue to disregard it.

**ANSWER:** The Fannie Mae Defendants deny that Fannie Mae authorized or accepted the Alleged Loan Modification. The Fannie Mae Defendants deny the allegations contained in this Paragraph.

106. It was unfair and deceptive for Seterus and Fannie Mae to defy Judge Meyer's final order in the foreclosure after the "default" on the original loan was dismissed with prejudice.

**ANSWER:** The Fannie Mae Defendants are unable to discern what is meant by "defy Judge Meyer's final order" and "after the 'default' on the original loan was dismissed with prejudice," and accordingly lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph. Answering further, the Fannie Mae Defendants affirmatively deny that they engaged in any violation of law or other wrongdoing, deny any and alleged liability to Plaintiffs, and deny that Plaintiffs are entitled to any relief.

107. It was unfair and deceptive for the Defendants to inundate Plaintiffs with conflicting and false information about the acceptance and receipt of the signed loan modification, to send conflicting and false correspondence with respect to the loan account, and to make contradictory communications in response to nearly all of Plaintiffs' phone calls.

**ANSWER:** The Fannie Mae Defendants deny that Fannie Mae authorized or accepted the Alleged Loan Modification. The Fannie Mae Defendants deny the allegations contained in this Paragraph as to them. The Fannie Mae Defendants lack knowledge or information sufficient to

form a belief as to the truth or falsity of the allegations contained in this Paragraph directed

against CitiMortgage.

108.    Defendants communications and conduct was purposely confusing, misleading, and designed to trick Plaintiffs into believing that a loan modification existed and induce Plaintiffs to make ongoing payments – while profiting from Plaintiffs' payments – and then attempt to profit further from a foreclosure sale of Plaintiffs' home and the collection of a personal deficiency from Plaintiff Ben Geske. *See* Exhibit G.

**ANSWER:**  The Fannie Mae Defendants deny that Fannie Mae authorized or accepted the

Alleged Loan Modification.  The Fannie Mae Defendants deny the allegations contained in this

Paragraph as to them.  The Fannie Mae Defendants lack knowledge or information sufficient to

form a belief as to the truth or falsity of the allegations contained in this Paragraph directed

against CitiMortgage.

109.    It was unfair for Seterus to charge improper attorney's fees, late fees, escrow charges, force placed insurance charges, and other charges on a loan that was not in default, and refuse to provide any explanation or basis for the fees over the next several years.

**ANSWER:**  The Fannie Mae Defendants deny that Fannie Mae authorized or accepted the

Alleged Loan Modification.  The Fannie Mae Defendants deny the allegations contained in this

Paragraph as to them.

110.    Defendants intended that Plaintiffs rely on their unfair and deceptive practices to induce Plaintiffs to make monthly payments, charge fees for "SpeedPay," and maximize its profits while they carried out a scheme to foreclose upon Plaintiffs' home, which would have led to greater profits, and obtain a personal deficiency judgment against Plaintiff Ben Geske.

**ANSWER:**  The Fannie Mae Defendants are unable to discern what is meant by "induce

Plaintiffs to make monthly payments," maximize profits" and "scheme to foreclose," but

attempting to respond, the Fannie Mae Defendants deny that Fannie Mae authorized or accepted

the Alleged Loan Modification.  The Fannie Mae Defendants deny the allegations contained in

this Paragraph as to them.  The Fannie Mae Defendants lack knowledge or information sufficient

to form a belief as to the truth or falsity of the allegations contained in this Paragraph directed

against CitiMortgage.

111.    It was unfair and deceptive for Defendants to disregard Fannie Mae guidelines and directives for the evaluation, formation, and servicing of Plaintiffs' loan modification.

**ANSWER:** The Fannie Mae Defendants are unable to discern what is meant by "Fannie Mae guideline and directives," and accordingly lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph. Answering further, the Fannie Mae Defendants deny that they engaged in any violation of law or other wrongdoing, deny any and alleged liability to Plaintiffs, and deny that Plaintiffs are entitled to any relief.

112.    Plaintiffs' inquiries and disputes regarding the servicing of their loan were never investigated or accurately answered. In conjunction with Defendants' outright misrepresentations, Plaintiffs were forced into a perpetual state of confusion regarding the status and safety of their home, depriving Plaintiffs of a peaceful existence. Plaintiffs relied upon the unfair and deceptive conduct to their detriment.

**ANSWER:** The Fannie Mae Defendants are unable to discern what is meant by "inquiries and disputes," "outright misrepresentations," "status and safety of their home," and "peaceful existence," but attempting to respond, the Fannie Mae Defendants deny the allegations contained in this Paragraph as to them. The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph directed against CitiMortgage.

113.    Defendants' conduct was willful, malicious, unfair, arbitrary, and designed to place Plaintiffs' account in a perpetual state of "default," and take advantage of vulnerable family.

**ANSWER:** The Fannie Mae Defendants deny the allegations contained in this Paragraph as to them. The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph directed against CitiMortgage.

114.    Defendants' conduct offends public policy as it demonstrates an industry-wide practice of charging unearned fees and costs to a borrower in order to make a profit, forcing borrowers to make loan modification payments without properly crediting the payments, and by

profiting off of Plaintiffs' payments, with the sole intention of ultimately filing foreclosure, selling the real estate, and obtaining a personal deficiency judgment against a borrower.

**ANSWER:** The Fannie Mae Defendants deny the allegations contained in this Paragraph as to them. The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph directed against CitiMortgage.

115.    Defendants' actions cause substantial injury to consumers generally because:

    i.   consumers reasonably expect their contracts to be honored and their loans and accounts to be properly managed and their payments will be properly applied;

    ii.   consumers reasonably expect that creditors and loan servicers will communicate with them truthfully and accurately regarding their loan and payments;

    iii.   consumers reasonably expect that loan servicers will not make false representations or induce payments on false pretenses;

    iv.   consumers reasonably expect that, if there is a dispute, the servicer will take honest efforts to resolve the dispute instead of misrepresenting facts; and

    v.   consumers reasonably expect that large corporations will honor and respect final court orders.

**ANSWER:** The Fannie Mae Defendants deny the allegations contained in this Paragraph as to them. The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph directed against CitiMortgage.

116.    Additionally, consumers do not expect to be blindsided by a foreclosure and a personal deficiency judgment after being induced to make payments on false pretenses, and after relying on foreclosing party's false representations regarding the status of the loan account.

**ANSWER:** The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph. Answering further, the Fannie Mae Defendants deny that they engaged in any violation of law or other wrongdoing, deny any and alleged liability to Plaintiffs, and deny that Plaintiffs are entitled to any relief.

117.    Defendants' overall scheme was designed to thwart Plaintiffs' attempts to enforce their loan modification and designed to discourage Plaintiffs from continuing to fight for their home, while tricking Plaintiffs into making all monthly payments.

**ANSWER:** The Fannie Mae Defendants are unable to discern what is meant by "Defendants' overall scheme," "continuing to fight for their home" and "tricking Plaintiffs into making all monthly payments," but attempting to respond, the Fannie Mae Defendants deny the allegations contained in this Paragraph as to them. The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph directed against CitiMortgage.

118. Plaintiffs could not avoid these immoral undertakings because the Defendants would not accurately communicate with them.

**ANSWER:** The Fannie Mae Defendants are unable to discern what is meant by "immoral undertakings," and "would not accurately communicate with them" and accordingly lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph. Answering further, the Fannie Mae Defendants deny that they engaged in any violation of law or other wrongdoing, deny any and alleged liability to Plaintiffs, and deny that Plaintiffs are entitled to any relief.

119. When taken as a whole over several years, the Defendants' conduct was so unethical and unending that Plaintiffs had no choice but to submit. Plaintiffs had no actual control over (a) how their payments were being applied, (b) the filing and prosecution of the foreclosure and the threat of a personal deficiency judgment, (c) how Defendants truly treated the loan internally, or (d) whether what the Defendants represented was truthful.

**ANSWER:** The Fannie Mae Defendants are unable to discern what is meant by "Defendants' conduct was so unethical and unending," "Plaintiffs had no actual control," and "how Defendants truly treated the loan internally," and accordingly lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph. Answering further, the Fannie Mae Defendants deny that they engaged in any violation of law or other wrongdoing, deny any and alleged liability to Plaintiffs, and deny that Plaintiffs are entitled to any relief.

120.    Defendants intended that Plaintiffs rely on their deceptive practices to induce payments each month and ultimately profit from illegal fees and charges, the sale of the subject property through foreclosure, and a personal deficiency judgment.

**ANSWER:** The Fannie Mae Defendants deny the allegations contained in this Paragraph as to

them. The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as

to the truth or falsity of the allegations contained in this Paragraph directed against CitiMortgage.

121.    Plaintiffs did in fact rely on Defendants' unfair and deceptive practices by doing exactly what Defendants directed Plaintiffs to do, making all of the monthly payments as directed, and actually believing that Defendants would honor their claims and representations, which resulted in the actual damages set forth in paragraphs 79 through 85 above.

**ANSWER:** The Fannie Mae Defendants deny the allegations contained in this Paragraph as to

them. The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as

to the truth or falsity of the allegations contained in this Paragraph directed against CitiMortgage.

122.    This conduct is part of a pattern and practice of behavior in which Defendants routinely engage as part of their business model. It is Defendants' normal business practice to disregard existing agreements and state and federal law, and then misstate the nature of outstanding "debts" and amounts "owed" to consumers for their own pecuniary gain.

**ANSWER:** The Fannie Mae Defendants deny the allegations contained in this Paragraph as to

them. The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as

to the truth or falsity of the allegations contained in this Paragraph directed against CitiMortgage.

123.    An award of punitive damages is appropriate because Defendants' conduct was outrageous, willful, and wanton, and it showed a reckless disregard for the rights of Plaintiffs over a four year period. Additionally, when Plaintiffs objected, Defendants attempted to silence Plaintiffs by intensifying their misconduct by filing a foreclosure lawsuit.

**ANSWER:** The Fannie Mae Defendants deny the allegations contained in this Paragraph as to

them. The Fannie Mae Defendants lack knowledge or information sufficient to form a belief as

to the truth or falsity of the allegations contained in this Paragraph directed against CitiMortgage.

WHEREFORE, the Fannie Mae Defendants deny any and all alleged liability in this

matter, request that judgment be entered in their favor and against Plaintiffs, with costs assessed,

and request that this Court grant such further and additional relief as it deems just and appropriate.

## Answer to Count III
### Alleged Violation of the Fair Debt Collection Practices Act Against Seterus

124.    Plaintiffs incorporate paragraphs 1 through 124 herein.

**ANSWER:** The Fannie Mae Defendants restate and incorporate by reference their answers and responses to Paragraphs 1-124 as their answer and response to this Paragraph.

125.    Plaintiffs are consumers under 15 U.S.C. § 1692a(3), as the subject loan was extended on Plaintiffs' primary residence for strictly personal, family, and household purposes.

**ANSWER:** The allegations contained in this Paragraph consist solely of legal conclusions rather than allegations of fact, and therefore no response is required.

126.    Seterus is a debt collector with respect to subject loan because it treated the subject loan as if it was in default at the time it acquired servicing right to the subject loan.

**ANSWER:** The allegations contained in this Paragraph consist solely of legal conclusions rather than allegations of fact, and therefore no response is required. To the extent that a response is required, Seterus denies the allegations contained in this Paragraph. Fannie Mae lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph.

127.    Seterus regularly uses the mails and telephone system to collect upon debts and loans from consumers.

**ANSWER:** Seterus is unable to discern what is meant by "to collect upon debts and loans from consumers," but attempting to respond, Seterus admits only that Seterus communicates with borrowers using mailed correspondence and telephone calls as appropriate and authorized under applicable law, but otherwise denies the allegations contained in this Paragraph. The allegations contained in this Paragraph are not asserted against Fannie Mae, and therefore no response is

required by it. To the extent the allegations may be construed as containing claims against it, Fannie Mae denies those allegations.

128.    Seterus violated 15 U.S.C. §§ 1692c(a)(2).

**ANSWER:** Seterus denies the allegations contained in this Paragraph. The allegations contained in this Paragraph are not asserted against Fannie Mae, and therefore no response is required by it. To the extent the allegations may be construed as containing claims against it, Fannie Mae denies those allegations.

129.    Section 1692c(a)(2) prohibits a debt collector from contacting a consumer directly after the debt collector is notified that the consumer is represented by an attorney.

**ANSWER:** Seterus admits the allegations contained in this paragraph only to the extent that they are consistent with the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), but denies that Seterus engaged in any violation of law or other wrong doing, and denies any and all alleged liability to Plaintiffs. The allegations contained in this Paragraph are not asserted against Fannie Mae, and therefore no response is required by it. To the extent the allegations may be construed as containing claims against it, Fannie Mae denies those allegations.

130.    Here, after Seterus was placed on notice that Plaintiffs were represented by an attorney, Seterus continued to contact Plaintiffs directly via telephone between October 29, 2012 and October 28, 2013.

**ANSWER:** Seterus is unable to discern what is meant by "Seterus was placed on notice that Plaintiffs were represented by an attorney," and according lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this Paragraph. The allegations contained in this Paragraph are not asserted against Fannie Mae, and therefore no response is required by it. To the extent the allegations may be construed as containing claims against it, Fannie Mae denies those allegations.

131.    Seterus also violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), 1692e(10), and 1692f by:

    i.    Misrepresenting the amount owed in Exhibit H; and

    ii.    Improperly adding default charges, attorney's fees (including estimated fees) and forced place insurance to Plaintiffs' loan balance; and

**ANSWER:**    Seterus denies the allegations contained in this Paragraph.    The allegations contained in this Paragraph are not asserted against Fannie Mae, and therefore no response is required by it. To the extent the allegations may be construed as containing claims against it, Fannie Mae denies those allegations.

132.    Section 1692e provides:

False or misleading representations [Section 807 of P.L.]

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .

(2)    The false representation of--

(A)    the character, amount, or legal status of any debt; or

(B)    any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt. . . .

(5)    The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .

(8)    Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. . . .

(10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .

**ANSWER:**  Seterus admits the allegations contained in this paragraph only to the extent that they are consistent with the FDCPA, but denies that Seterus engaged in any violation of law or

other wrong doing, and denies any and all alleged liability to Plaintiffs. The allegations contained in this Paragraph are not asserted against Fannie Mae, and therefore no response is required by it. To the extent the allegations may be construed as containing claims against it, Fannie Mae denies those allegations.

133.     Section 1692f provides:

Unfair practices [Section 808 of P.L.]

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1)     The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. . . .

**ANSWER:** Seterus admits the allegations contained in this paragraph only to the extent that they are consistent with the FDCPA, but denies that Seterus engaged in any violation of law or other wrong doing, and denies any and all alleged liability to Plaintiffs. The allegations contained in this Paragraph are not asserted against Fannie Mae, and therefore no response is required by it. To the extent the allegations may be construed as containing claims against it, Fannie Mae denies those allegations.

WHEREFORE, the Fannie Mae Defendants deny any and all alleged liability in this matter, request that judgment be entered in their favor and against Plaintiffs, with costs assessed, and request that this Court grant such further and additional relief as it deems just and appropriate.

## AFFIRMATIVE DEFENSES

The Fannie Mae Defendants state the following for their Affirmative Defenses:

1.     On March 28, 2008, CitiMortgage, Inc. extended a loan to Benjamin C. Geske in

the original principal amount due of $254,479.00 ("Subject Loan") which loan is secured by a mortgage on the real estate commonly known as 142 Bloomfield Drive in Woodstock, Illinois ("Subject Property").

2.      CitiMortgage was the mortgage servicer of the Subject Loan until November 1, 2010, when servicing of the Subject Loan was transferred to Seterus.

3.      In connection with the transfer of servicing, CitiMortgage informed Seterus that the Plaintiffs defaulted on the Subject Loan in May of 2010 by failing to make payment as agreed.

4.      In connection with the transfer of servicing, CitiMortgage informed Seterus that the Subject Loan had not been modified, and that the May 2010 payment and all subsequent payments due on the Subject Loan were still due and owing.

5.      Subsequent to the transfer of servicing, Plaintiffs represented and asserted to Seterus that they had been provided a loan modification by CitiMortgage (the "Alleged Loan Modification").

6.      Seterus immediately investigated Plaintiff's assertions as to the Alleged Loan Modification.

7.      CitiMortgage represented and confirmed to Seterus that CitiMortgage had not accepted the Alleged Loan Modification, and that the Alleged Loan Modification was not valid or enforceable.

8.      Plaintiffs provided Seterus with a copy of the Alleged Loan Modification.

9.      Seterus determined that the Alleged Loan Modification was not workable, as the payments stated therein would not pay off the balance due on the Subject Loan, and would thereby leave Plaintiffs with a substantial balance due and owing even after all payments stated

in the Alleged Loan Modification were paid.

10.     On or about March 4, 2011, and after Seterus determined that the Alleged Loan Modification was unworkable, Seterus notified Plaintiffs of the problems with the Alleged Loan Modification.

11.     Seterus then engaged in extensive efforts to try to cure the problems with the Alleged Loan Modification and make it workable.

12.     In order to try to cure the problems with the Alleged Loan Modification and make it workable, Seterus offered Plaintiffs several trial plan modification offers on August 8, 2011, July 27, 2011 and June 28, 2012.

13.     Each and every time Seterus offered Plaintiffs trial plan modification options, none of the options were accepted by the Plaintiffs.

14.     On several occasions, Plaintiffs failed to even provide Seterus with the documents necessary to consider Plaintiffs for a permanent loan modification.

15.     On January 16, 2013, Seterus sent Plaintiffs' counsel a communication pursuant to a court supervised settlement process in the foreclosure action which was filed in the Circuit Court of the 22nd Judicial Circuit for McHenry County – Woodstock, Illinois, bearing case number 11 CH 1005 ("Foreclosure Action"), and not as any sort of demand or as any sort of assertion of amounts actually due and owing from Plaintiffs.

**First Affirmative Defense**

16.     The Fannie Mae Defendants restate and incorporate by reference the facts stated in Paragraphs 1-15 of their Affirmative Defenses above.

17.     Plaintiffs failed and refused to cooperate with Seterus's extensive efforts to cure the problems with the Alleged Loan Modification and make it workable.

18.     To the extent that Plaintiffs suffered any alleged damages, the existence of which are expressly denied, the alleged damages are barred and/or limited in whole or in part by the Plaintiffs' own failure to mitigate the alleged damages, and/or the alleged damages were caused in whole or in part by their own acts or omissions.

WHEREFORE, the Fannie Mae Defendants request that judgment be entered in their favor and against Plaintiffs, with costs and attorneys' fees assessed, and request that this Court provide such further and additional relief as it deems just and appropriate.

### Second Affirmative Defense

19.     The Fannie Mae Defendants restate and incorporate by reference the facts stated in Paragraphs 1-15 of their Affirmative Defenses above.

20.     Fannie Mae filed the Foreclosure Action on April 19, 2009 by and through its counsel.

21.     In the Foreclosure Action, on January 27, 2012, Plaintiffs filed their Motion for Summary Judgment, asserting that the Subject Loan had been modified and was not in default.

22.     On July 12, 2012, the court in the Foreclosure Action granted Plaintiffs' Motion for Summary Judgment.

23.     In the Foreclosure Action, on September 3, 2013, Plaintiffs filed their Motion for Leave to File Counterclaims Against Federal National Mortgage Association.

24.     Plaintiffs' proposed counterclaims attempted to assert three causes of action against Fannie Mae: Breach of Contract; Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act; and Defamation.

25.     The facts alleged in support of Plaintiffs' purported counterclaim mirror the allegations in their Complaint, including:

a. The purported existence of the Loan Modification between Plaintiffs and CitiMortgage;

b. Breach of the purported Loan Modification; and

c. Violation of Illinois Consumer Fraud and Deceptive Business Practices Act.

26. On September 27, 2013, the court in the Foreclosure Action denied the Plaintiffs Motion for Leave to File Counterclaim, and dismissed the Foreclosure Action with prejudice.

27. Plaintiffs' allegations in this action are barred by res judicata, collateral estoppel, or otherwise.

WHEREFORE, the Fannie Mae Defendants request that judgment be entered in their favor and against Plaintiffs, with costs and attorney's fees assessed, and request that this Court provide such further and additional relief as it deems just and appropriate.

## Third Affirmative Defense

28. Seterus restates and incorporate by reference the facts stated in Paragraphs 1-15 of its Affirmative Defenses above.

29. Seterus denies that it violated 15 U.S.C. §§ 1692c, 1692e, 1692e(2), 1692e(8), 1682e(10) and 1692f, denies that it violated any other provision of the FDCPA, and denies that it violated or is otherwise liable under the FDCPA.

30. Nevertheless, any alleged violation of the FDCPA by Seterus would have been unintentional, resulting from a bona fide error made in good faith, and occurring despite Seterus's processes and procedures that were reasonably designed and actually implemented to avoid any such alleged error.

31. More specifically, Seterus's processes and procedures include, without limitation:

a. verification and cross-checking of Seterus's own records with underlying

documentation and related information, verification and cross-checking of the records provided to Seterus by the transferor servicer, and other processes and procedures that would have prevented the alleged violations under the circumstances alleged here; and

        b.     Seterus's investigation and analysis of the relevant documents and records indicated that there was no loan modification agreement reached on the Subject Loan between the Plaintiffs and CitiMortgage, and that Plaintiffs were in default on their loan obligations; and

        c.     Strict prohibitions on calling borrowers on mortgage loans serviced by Seterus after Seterus received notice that the borrowers were represented by counsel; and

        d.     Strict prohibitions on attempting to in any way mislead or deceive borrowers on mortgage loans serviced by Seterus; and

        e.     Strict prohibitions on threatening to take any action that Seterus was not legally authorized to take, and/or that Seterus did not intend to take, against borrowers on mortgage loans serviced by Seterus.

32.    Therefore, any error in Seterus's assessment of the facts would not be the result of a knowing or intentional act by Seterus, and would thus be and unknowing and unintentional bona fide error, notwithstanding the maintenance of procedures reasonably adapted by Seterus to avoid such error.

33.    Accordingly, even if an FDCPA violation had in fact somehow occurred as alleged, which Seterus denies, Seterus would not be liable under the FDCPA pursuant to 15 U.S.C. § 1692k(c).

WHEREFORE, Seterus requests that judgment be entered in its favor and against Plaintiffs, with costs and attorney's fees assessed, and request that this Court provide such further and additional relief as it deems just and appropriate.

**Fourth Affirmative Defense**

34.    Seterus restates and incorporate by reference the facts stated in Paragraphs 1-15 of its Affirmative Defenses above.

35.    The January 16, 2013 communication attached to the Second Amended Complaint was sent to the Plaintiffs' counsel as a settlement communication in the Foreclosure Action and was not an attempt to collect a debt.

36.    Therefore, to the extent Plaintiffs attempt to allege the January 16, 2013 communication attached to the Second Amended Complaint as Exhibit H constitutes a violation of the FDCPA, the January 16, 2013 communication was not sent to Plaintiffs directly, and was not for the purposes of attempting to collect a debt.

37.    Accordingly, the FDCPA does not apply to the January 16, 2013 communication.

WHEREFORE, Seterus requests that judgment be entered in its favor and against Plaintiffs, with costs and attorneys' fees assessed, and request that this Court provide such further and additional relief as it deems just and appropriate.

**Fifth Affirmative Defense**

38.    Seterus restates and incorporate by reference the facts stated in Paragraphs 1-15 of its Affirmative Defenses above.

39.    The parties never agreed to enter into the Alleged Loan Modification purportedly offered by CitiMortgage.

40.    Fannie Mae never approved or authorized entering into the Alleged Loan Modification Agreement.

41.    The terms of the Alleged Loan Modification would not pay off the amounts owed under the Subject Loan, and was unworkable.

42.     Therefore, there was no meeting of the minds as to the Alleged Loan Modification and/or there was a mutual mistake among the parties such that no valid contract was entered into.

43.     Accordingly, the Alleged Loan Modification is not a binding agreement.

WHEREFORE, the Fannie Mae Defendants request that judgment be entered in its favor and against Plaintiffs, with costs and attorneys' fees assessed, and request that this Court provide such further and additional relief as it deems just and appropriate.

### Sixth Affirmative Defense

44.     Seterus restates and incorporate by reference the facts stated in Paragraphs 1-15 of its Affirmative Defenses above.

45.     To the extent that the Alleged Loan Modification was a valid and binding contract, the Subject Loan was current at the time of the service transfer to Seterus.

46.     Accordingly, pursuant to 15 U.S.C. § 1692a(6)(F)(iii), the FDCPA does not apply to Seterus.

WHEREFORE, Seterus requests that judgment be entered in its favor and against Plaintiffs, with costs and attorneys' fees assessed, and request that this Court provide such further and additional relief as it deems just and appropriate.

### Seventh Affirmative Defense

47.     Seterus restates and incorporate by reference the facts stated in Paragraphs 1-15 of its Affirmative Defenses above.

48.     Plaintiffs failed and refused to cooperate with Seterus's extensive efforts to cure the problems with the Alleged Loan Modification and make it workable.

49.     For example, Seterus offered Plaintiffs numerous loss mitigation options, but Plaintiffs rejected each offer.

50.     Additionally, Plaintiffs have not made payment on the Subject Loan since April of 2011, in the amounts stated in the Alleged Loan Modification or otherwise, but continue to reside at the property securing the Subject Loan.

51.     Plaintiffs' claims are barred by the doctrine of unclean hands.

WHEREFORE, the Fannie Mae Defendants request that judgment be entered in its favor and against Plaintiffs, with costs and attorneys' fees assessed, and request that this Court provide such further and additional relief as it deems just and appropriate.

The above Affirmative Defenses are based on the facts currently known to the Fannie Mae Defendants, and the Fannie Mae Defendants reserve the right to amend or add affirmative defenses based on facts that may later be discovered, pled, or offered.

Dated:  July 15, 2015                                    Respectfully submitted,

                                                        **FEDERAL NATIONAL MORTGAGE**
                                                        **ASSOCIATION, and SETERUS, INC.,**

Ralph T. Wutscher
Ernest P. Wagner                                        Defendants,
Charles J. Ochab
Daniel B. Nora
MAURICE WUTSCHER LLP
105 W. Madison Street, 18th Floor
Chicago, Illinois  60602
Tel.  (312) 416-6170                        By:      /s/ Daniel B. Nora
Fax  (312) 284-4751

**Certificate of Service**

I, Daniel B. Nora, an attorney, hereby certify that on **July 15, 2015**, service of a true and correct copy of this document and any referenced exhibits was accomplished pursuant to ECF on all parties who are Filing Users.

                                            /s/ Daniel B. Nora