**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | | |
|---|---|---|---|
| BENJAMIN GESKE and JAMIE DUPAW; | Plaintiffs; | ) ) ) ) | CIVIL ACTION |
| | | ) | File No. 1:13-cv-07720 |
| | v. | ) ) | |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION; SETERUS, INC.; and CITIMORTGAGE, INC.; | | ) ) ) ) | JURY TRIAL DEMANDED |
| | | ) | Honorable Robert M. Dow, Jr. |
| | Defendants. | ) | |

**PLAINTIFFS' RESPONSE TO CITIMORTGAGE, INC.'S MOTION
TO DISMISS COUNT II OF PLAINTIFFS' SECOND AMENDED COMPLAINT**

Plaintiffs Benjamin Geske and Jamie DuPaw respond in opposition to the motion to dismiss Count II of their second amended complaint filed by Defendant CitiMortgage, Inc. ("Citi") as follows:

**FACTUAL ALLEGATIONS**

Ben and Jamie Geske (collectively "Geske") are husband and wife who reside at 142 Bloomfield Drive, Woodstock, IL 60098 ("subject property"). (Second Amended Complaint ("SAC") ¶ 5.) [DKT #100.] In 2008, Geske obtained a mortgage loan secured by the subject property with monthly payments of $1,950.00 for principal, interest, and escrow. (*Id.* ¶¶ 12,13; Ex. A, B.) On August 29, 2010, Citi approved Geske for a loan modification that required a down payment of $4,715.12 (due September 29, 2010) and new monthly payments of $1,283.10 beginning November 1, 2010 and continuing each month thereafter. (*Id.* ¶¶ 14-20; Ex. C, D.)

In reliance upon Citi's promise to modify the loan, Geske accepted Citi's loan modification offer, complied with all required terms, and made the $4,715.12 down payment on time to Citi. (*Id.* ¶¶ 21, 22.) On September 27 and September 28, 2010, Citi received the signed and notarized loan modification from Geske via UPS and then entered a notation into its system

1

of record. (*Id.* ¶¶ 23-24.) On September 29 and 30, 2010, Citi cashed and deposited Geske's $4,715.12 payment and specifically advised Geske that the loan was modified. (*Id.* ¶¶ 25, 26.)

On October 1, 2010, and unbeknownst to Geske, Citi deducted two payments of $1,944.20 (the monthly payment for the original loan) from Geske's $4,715.12 down payment for the loan modification and misapplied those payments as if the loan was not modified. (*Id.* ¶ 27.) Shortly after the loan was modified, Citi informed Geske that the servicing rights to Geske's account were transferring to Seterus effective November 1, 2010. (*Id.* ¶ 28.) Geske called Citi to confirm the loan modification would be transferred to Seterus, and Citi specifically advised Geske that it would provide Seterus with the finalized loan modification contract. (*Id.* ¶ 29.) Despite the loan modification bringing the loan current, Citi charged Geske's account $213.75 in late fees on October 31, 2010 – one day before the transfer – and deducted that amount from Geske's down payment without Geske's knowledge. (*Id.* ¶ 30.)

Contrary to its representations to Geske, Citi never actually modified the loan, implemented the loan modification, nor informed Seterus of Geske's loan modification; instead Citi transferred Geske's account to Seterus as in default and unmodified. (*Id.* ¶ 31.)

On November 2, 2010, Seterus directed Geske to make payments to Seterus under the terms of the loan modification while it awaited the complete loan file from Citi. (*Id.* ¶¶ 32-36.) Geske made and Seterus accepted all monthly payments as required under the loan modification. (*Id.*) Thereafter, Seterus sent Geske conflicting correspondences that suggested the loan was not modified. (*Id.* ¶¶ 37-40.) Seterus informed Geske that Citi never transferred a signed loan modification and that Seterus would only accept a signed agreement from Citi. (*Id.* ¶¶ 45-46.)

During November 2010, Geske contacted Citi numerous times to request that Citi provide Seterus with the signed loan modification and to request a three-way call to clear up any

2

discrepancy; Citi refused, took no action, and provided no assistance. (*Id*. ¶¶ 43-44, 47.)

Geske continued to make loan modification payments each month through April 2011. (*Id*. ¶ 51.) On April 19, 2011, Seterus, through Defendant Fannie Mae, filed foreclosure against Geske in Illinois state court alleging that Geske was in default on the *original loan* for the monthly payments beginning in May 2010. (*Id*. at ¶¶ 56-59; Ex. G at ¶3(l).) The wrongful foreclosure lawsuit was proximately caused, at least in part, by Citi's conduct, because the false information in the complaint originated with Citi and was later provided to Seterus. (*Id.* ¶ 60.)

In the foreclosure case, summary judgment was entered in Geske's favor and against Seterus/Fannie Mae on the basis that there was a valid and enforceable loan modification, under which Geske performed, and that there was no actionable default in light of the loan modification. (*Id.* ¶ 64; Ex. I.) The case was dismissed with prejudice on September 27, 2013.

### a. Seterus' Allegations[1]

On July 15, 2015, Seterus filed an answer to Geske's second amended complaint and affirmative defenses. [DKT # 111.] Seterus alleged, "in connection with the transfer of servicing, [Citi] informed Seterus that [Geske] defaulted on the Subject Loan in May of 2010 by failing to make payments as agreed. [*Id*. p. 45, ¶ 3.] "In connection with the transfer of servicing, [Citi] informed Seterus that the Subject Loan had not been modified, and that the May 2010 payment and all subsequent payments due on the Subject Loan were still due and owing." [*Id*. ¶ 4.] "Citi represented and confirmed to Seterus that [Citi] had not accepted the Alleged Loan Modification, and that the Alleged Loan Modification was not valid or enforceable." [*Id*. ¶ 7.]

---

[1] Geske understands that a Rule 12(b)(6) motion tests the sufficiency of the complaint and does not address another party's pleadings. However, Geske cites to Seterus' own allegations to illustrate the *plausibility* of Geske's ICFA claim. These allegations, if also true, establish that Citi not only refused to cooperate after the transfer as promised, but also falsely informed Seterus that (a) the original loan was in default for May 2010, (b) the loan modification was not accepted by Citi, and (c) Geske failed to make payments as agreed. Geske would request leave to amend their complaint at the appropriate time to include Seterus' admissions.

3

**ARGUMENT**

ICFA is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons from "unfair or deceptive acts or practices," including "fraud," "false promise," and the "misrepresentation or the concealment, suppression or omission of any material fact." 815 ILCS 505/2. The Act is liberally construed to effectuate its purpose. *Wigod v. Wells Fargo, N.A.*, 673 F.3d 547, 574 (7th Cir.2012) (citing *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 416-17 (2002)). A borrower may recover for unfair or deceptive conduct; a practice need not be deceptive to be unfair. *Siegel v. Shell Oil Co.,* 612 F.3d 932, 934 (7th Cir.2010).

**I. GESKE'S ICFA CLAIM IS DISTINCT FROM BREACH OF CONTRACT**

    a. Citi's Motion

In its motion, Citi argues that Geske's ICFA claim is merely a breach of contract claim in disguise, and thus, requires dismissal. [DKT #107 ("MTD") pp. 3-4, 9-10.] Citi claims that *only one* allegation is even arguably separate from breach of contract – that Citi failed to assist Geske in their dealings with Seterus – and then argues why this specific conduct is still not actionable under ICFA. [*Id.* pp. 5-8.] Without any discussion or analysis, Citi concludes that all of the remaining allegations of unfairness and deception are simply recycled breach of contract claims founded upon Citi's failure to honor the loan modification's terms or apply payments properly as required by the loan modification contract. [*Id.* pp. 3-4.] However, these arguments misrepresent some of Geske's allegations while ignoring others.

    **b. Geske's ICFA Allegations**

Geske concedes that a valid ICFA claim requires a plaintiff to allege "unfair or deceptive conduct [that is] distinct from the alleged breach of a contractual promise." *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir.2011) (quoting *Zankle v.*

*Queen Anne Landscaping*, 311 Ill. App. 3d 308, 312 (2d Dist. 2000). Here, however, Geske's ICFA allegations are separate from breach of contract and specifically address Citi's false statements and unfair conduct distinct from any contractual obligations.

    i.    Citi made false statements to Geske as to the status of their loan account, the amounts owed, how payments would be applied, how Geske *should* act, and Citi's actual treatment of Geske's account internally. (*Id*. ¶ 99.)

    ii.    Citi falsely represented to Geske that the loan modification was finalized and the account was current when Citi never actually implemented the loan modification and continued to treat the loan as in default. (*Id*. ¶ 100, 102.)

    iii.    Citi induced – both orally and in writing – Geske to make payments on the loan modification even though Citi never intended to implement nor actually implemented the loan modification internally. Citi then took Geskes' money and applied it internally to a superseded account and associated fees. (*Id*. ¶ 101.)

    iv.    Citi communicated conflicting and false information to Geske regarding the status, acceptance, and receipt of the signed loan modification. (*Id*. ¶ 107.)

    v.    Citi informed Geske that the loan modification was booked in its system and final, yet failed to provide Seterus the modified loan account upon the November 1, 2010 transfer, even though Citi had previously promised Geske that Citi would provide Seterus the finalized loan modification. (*Id*. ¶ 103.)

    vi.    Citi refused to provide Seterus with the loan modification after repeated requests and refused to take part in a three-way phone call with Geske and Seterus to address the transfer of the signed loan modification. (*Id*. ¶ 104.)

(See also *Id.* ¶¶ 19-31, 43-47.)

In its motion, Citi trivializes these allegations and reduces them to nothing more than a failure to properly apply payments or honor contractual terms. While Citi's summary of Geske's allegations does sound a lot like breach of contract, its summary is inaccurate. Nothing alleged above deals with contractual terms or obligations. The allegations address false promises and the misrepresentation or the concealment, suppression, or omission of material facts. *See* 815 ILCS 505/2. Moreover, other than paragraph ¶ 104, Citi does not even argue how these allegations equate to a contractual duty under the loan modification or a simple a failure of Citi to hold up its end of the bargain. Therefore, Citi has waived any arguments on those allegations. *Mendez v. Perla Dental*, 646 F.3d 420, 423 (7th Cir.2011). All of Citi's conduct was shrouded in

misrepresentations intended to prevent Geske from discovering the truth.

### c. Citi's Unfair and Deceptive Conduct

First, Geske's allegations of deception and unfairness are founded upon allegations that Citi specifically informed Geske on multiple occasions that the original loan was modified, that the modification was finalized, and that Geske's account was current and no longer in default. (*Id*. ¶¶ 17-19, 21-25, 29.) In the same breath, Citi never truly modified the loan, and instead used these lies to induce Geske's down payment. (*Id*. ¶¶ 27, 30-31.) These false statements are unfair, deceptive, and do not speak to contractual obligations. (*Id*.)

Second, Citi appears to equate both (a) a misapplication of payments with false statements about *how* payments were applied and (b) a failure to *honor* the loan modification's terms with *false statements regarding the existence* of the loan modification. Geske concedes that misapplying payments or failing to honor the modification's terms are contractual issues, but misrepresenting how payments were applied and lying about the loan modification being "finalized" are separate issues that do not speak to contractual terms. (*Id*. ¶¶ 23-25, 27, 29-31.)

Third, Geske alleged that Citi employed conflicting and misleading communications regarding amounts due, the status of the account, and misrepresented how payments were applied in a manner that Geske could not decipher. (*Id*. ¶¶ 17-19, 25-27, 29.) Citi's false and confusing communications are independent and actionable unfair and deceptive conduct.

Fourth, Citi's failure to provide Seterus the loan modification, after promising to do so, is a false and unfair promise and not a contractual obligation.

Fifth, Citi's refusal to provide assistance to Geske after the loan was transferred to Seterus was clearly unfair. All of this conduct is distinct from any contractual promises.

In *Gritters v. Ocwen Loan Serv., LLC*, 2014 WL 7451682 (N.D.Ill. Dec. 31, 2014), the

6

defendant argued, similarly to Citi, that plaintiff's ICFA claim should be dismissed because "ICFA is not a remedy for purely private contractual disputes that do not impact the public generally." *Id.* at *7. In *Gritters*, the plaintiff (borrower) alleged that the defendant (loan servicer) mishandled her loan account and made unfair and deceptive representations regarding her account and how her payments were applied. *Id*. In distinguishing a simple misapplication of payments from misrepresentations regarding those payments and the account status, the *Gritters* court held that plaintiff's ICFA claim was sufficient and set forth more than breach of contract, because plaintiff alleged, "outright misrepresentations as to the status of her loan, the amounts owed, and how their payments were applied." *Id.* Here, Geske alleged similar conduct to that analyzed in *Gritters* – those allegations amount to more than "loan servicing errors" or allegations based on "interpretations of contractual provisions." *Id.*

In *Typpi v. PNC Bank*, *N.A.*, 2014 WL 296035, at *8 (N.D. Ill Jan. 27, 2014), the defendant (loan servicer) also sought dismissal of the plaintiff's (borrower) ICFA claim – that alleged false and confusing communications, improper fees, and mishandling of the loan account – as duplicative of breach of contract. *Id.* In denying the motion to dismiss, the *Typpi* court noted that unfair conduct may arise "where the defendant's conduct gave plaintiff no reasonable alternative to avoid a charge or penalty," or resulted in a lack of meaningful choice or placed an unreasonable burden on the consumer. *Id.* at *8 (citing *Hill v. PS Ill. Trust,* 368 Ill.App.3d 310 (1st Dist. 2006)). In *Typpi,* it was sufficient for plaintiff to plead defendant's mishandling of the payments, failure to accurately communicate with him about the status of his loan, and that defendant's conduct gave him no meaningful choice but to submit. *Id.* at *8. (SAC ¶¶ 107, 108, 112-115, 117-119.) Here, Geske's allegations establish that they had "no choice but to submit" and that Geske "had no actual control over how their payments were applied....how [Citi] truly

7

treated the loan internally, or whether what [Citi] represented was truthful." (*Id.* ¶ 119.)

Similar to *Typpi*, "[Geske] has pleaded that there was no way for [them] to avoid the fees since they were deducted without his knowledge or authorization. (*Id.* ¶ 27. 30.) Moreover, [their] attempts to remedy the charges were frustrated by mixed signals and conflicting information from [bank] representatives." 2014 WL 296035, at *8. (*Id.* ¶ 25-31.)

## II. GESKE ALLEGES A VIABLE ICFA DECEPTION CLAIM

Geske does not dispute Citi's cited standard for ICFA or deception or that deception is subject to Rule 9(b), but Geske would point out that the first and second prong of the deception standard may be satisfied by innocent representations; plaintiff need only show that the defendant intended plaintiff to rely (intentionally or unintentionally) on the deceptive information. *Choi v. Aegis Morg. Corp.*, 286 F.Supp.2d 956, 963-64 (N.D.Ill. 2003).

Citi states, without developing an argument, that Geske did not plead ICFA deception with particularity. (MTD p. 5.) The entirety of Citi's deception took place between September 2010 and November 2010. Geske was very specific as to the dates of conversations and actions, the contents of the communications, who was involved, what happened during the communications, how the parties responded, the specific amounts and dates of payments, fees, and charges, and even what Citi truly did internally. (*Id.* ¶¶ 17-47.) It is entirely unclear from Citi's motion what additional information could be plead with more specificity. *See DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990) (providing the Rule 9(b) standard to plead fraud as essentially "the first paragraph of any newspaper story.").

The only alleged conduct that Citi even addresses in this section relates to Geske's allegations of Citi's failure to *assist* Geske *after* the loan was transferred to Seterus. (MTD. pp. 5-6.) First, Citi tries to claim that it was "open and honest" with Geske simply because Citi

8

advised Geske that they "needed to deal with Seterus directly" after the transfer. (*Id*. p. 5.) This borders on the preposterous. Citi was well aware that Geske could not effectively deal with Seterus because the entire dispute was founded upon Citi's misrepresentations to Seterus. (SAC ¶¶ 43-47.) [DKT # 111 p. 45, ¶ 3.] Second, these allegations demonstrate the oppressiveness of Citi's conduct, Geske's lack of control over the situation, and that Geske was damaged by their reliance on Citi's communications both pre and post-transfer. [*Id*.] (SAC ¶¶ 25, 29, 31, 43-44, 60.) Third, Geske only alleged that this specific conduct was unfair, not deceptive. (*Id.* ¶ 104.)

Geske fully addressed the remaining deceptive conduct in the section above, and Citi does not address any of that conduct in its motion. Therefore, these omitted arguments are waived. Lastly, Geske alleged that Citi intended Geske to rely on its deception to induce payments, profit from illegal fees, and maximize profits. (*Id*. ¶¶ 110, 114.)

### III. GESKE ALLEGES A VIABLE ICFA UNFAIRNESS CLAIM

Again, Citi sets forth the proper standard for ICFA unfairness, but then only addresses conduct that occurred after the transfer to Seterus, while disregarding the remaining allegations of unfairness.[2] Geske fully addressed many other alleged acts of unfair conduct in section I. above, and Citi does not address any of that conduct in its motion, resulting in a waiver.

To determine whether a business practice is unfair, a court may consider "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson,* 201 Ill.2d at 417–18. "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id*. at 418 (citation omitted). A plaintiff is entitled to recover under ICFA for

---

[2] Citi also argues that Geske did not distinguish between Citi and Seterus in the complaint. Geske did distinguish between Citi and Seterus in most allegations, and also referred to both as "Defendants" where appropriate. *Frazier v. U.S. Bank Nat. Ass'n*, 2013 WL 1337263, at *3 (N.D. Ill. Mar. 29, 2013) (complaint did not fail for group pleading).

9

*any* unfair or misleading conduct. *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.,* 536 F.3d 663, 670 (7th Cir. 2008).

As to the first prong, Citi's conduct offends public policy as it demonstrates an industry-wide practice of charging unearned fees and costs to borrowers, forcing borrowers to make loan modification payments without ever actually modifying the loan, and by profiting from the borrowers' payments and collection of fees. (SAC ¶¶ 114.) Geske alleged that Citi disregarded Fannie Mae guidelines and directives for loan modifications. (*Id.* ¶ 78.) Citi's conduct with Geske is part of a pattern and practice of behavior where servicers disregard consumer agreements, violate state and federal servicing standards, and then misstate the nature of outstanding "debts" and amounts "owed" to consumers for their own pecuniary gain. (*Id.* ¶ 122.) Geske's allegations of a pattern and practice of mishandling loan modifications with misrepresentations and in a manner contrary to the reasonable expectations of consumers are far from conclusory. (*Id.* ¶ 115.) This type of misconduct has been well documented in the media for several years, and resulted in hundreds of millions of dollars in fines and penalties assessed to loan servicers, including Citi – from the federal government, the CFBP, and state attorneys general, etc. – for servicing improprieties surrounding loan modifications.[3]

The second prong, addressing oppression, immoral, and unethical conduct, "is met where

---

[3] On April 4, 2012, Citi settled a suit brought by the United States Government and the Attorney General of the State of Illinois, among others, by entering into a consent judgment. *National Mortgage Settlement* (Feb. 2012), http://www.nationalmortgagesettlement.com (last visited Aug. 12, 2015). The Settlement includes mandatory servicing procedures that were to be fully implemented by Citi by October 2, 2012. *Id.* In particular, upon transfer to a successor servicer, Citi was required to inform the successor servicer of any pending loan modification, and mandate that the contract for transfer of sale of servicing obligate the successor servicer to accept and continue processing the loan modification, "and that it will honor trial and permanent loan modification agreements entered into with the prior servicer. *Id.* at p. A-31, ¶¶ M(1)-(2).

*See also Residential Credit Sol'ns, Inc.*, 2015 CFPB 0019 (Jul. 30, 2015) ("Respondent has committed deceptive acts or practices by making misrepresentations to consumers regarding their payment obligation and the status of their loans.").

the conduct is so oppressive that the consumer has little choice but to submit." *Robinson,* 201 Ill.2d at 417–18. Geske satisfies this prong with allegations that Citi's conduct was "oppressive because Plaintiffs could not avoid these immoral undertakings...[Citi's] conduct was so unethical and unending that Plaintiffs had no choice but to submit....Geske had no actual control over how their payments were being applied....how [Citi] truly treated the loan internally, or whether what [Citi] represented was truthful." (SAC ¶¶ 118-120.) Geske would also refer to pages seven and eight above, where Geske discussed the *Typpi* decision. *See Typpi*, 2014 WL 296035, at *8. (citing *Centerline Equip. Corp. v. Banner Pers. Servs.,* 545 F.Supp.2d 768, 780 (N.D.Ill. 2008) ("Conduct is oppressive [under ICFA] only if it imposes a lack of meaningful choice or an unreasonable burden on its target.")).

The third prong addresses whether the alleged unfair conduct causes injuries to consumers generally. The court can consider whether the injury is (a) substantial, (b) outweighed by any countervailing benefits to consumers or competition that the practice produces, and (c) one that consumers could not have reasonably avoided. *Siegel*, 612 F.3d at 935.

Citi's argument addressing the third prong is misplaced, as Citi only argues that *Geske* has not been plausibly injured by *Citi's* conduct. (MTD p. 8.). However, this prong addresses injury to consumers and the market generally. *Centerline,* 545 F. Supp. 2d at 780 ("Costs that are imposed on an unwilling consumer can constitute a substantial injury...Even very small individual harms can be considered substantial, if they are part of a practice that, in the aggregate, causes substantial losses to the public as a whole."). *Id.* Geske specifically alleged how this category of conduct causes substantial injury to consumers. (SAC ¶ 115.) At a minimum, Geske's allegations "plausibly suggest that the aggregate harm caused by this practice would be substantial." *Id.* Geske's allegations satisfied all three prongs to state an unfairness

claim and Citi's motion should be denied.

### a. Geske Adequately Alleged Damages

Geske would submit that Citi failed to argue that Geske did not to plead damages proximately caused by Citi's unfairness or deception. (MTD. p. 8) Alternatively, Geske complained of actual damages proximately resulting from Citi's conduct including (i) physical illness, injury, and medical bills; (ii) emotional distress, stress, and anxiety; (iii) public humiliation, embarrassment, and harm to reputation; (iv) expenditure of money; (v) loss of time to enforce their rights; (vi) a wrongful foreclosures; and (vii) additional interest, default charges, and other illegal charges been wrongfully added to their loan balance. (*Id.* ¶¶ 79-85.)

The question is whether a jury could find Citi's actions to be the proximate cause of Geske's damages. *Wiegel v. Stork Craft Mfg., Inc.*, 780 F.Supp.2d 691, 694 (N.D.Ill. 2011). To allege ICFA damages, Geske must only show that they suffered harm in some concrete, ascertainable way that made their situation tangibly worse off. *Id*. *Wigod*, 673 F.3d at 575.

In *Wigod*, the Court held:

> Wigod's allegations that she incurred costs and fees, lost other opportunities to save her home, suffered a negative impact to her credit, never received a Modification Agreement, and lost her ability to receive incentive payments during the first five years of the modification...By the time Wigod realized she would not receive the permanent modification she believed she had been promised, late fees had mounted and she found herself in default on her loan and with fewer options than when the trial period began....Her allegations [of pecuniary loss under ICFA] are at least plausible.

*Id*. at 574-576. *See also Pniewski v. U.S. Bank, N.A.,* 2014 WL 1052813, at *3 (N.D.Ill. 2014); *Vangsness v. Deutsche Bank Nat'l Trust Co.*, 2013 WL 3031017, at *3 (N.D.Ill. 2013) (ICFA damages include emotional distress, depressed value of the home, and the necessity to hire attorneys due to misrepresentations surrounding a loan modification).

**CONCLUSION**

Geske's allegations are sufficient to state a claim under for unfairness and deception ICFA. Geske respectfully requests that this Court enter an order denying Citi's motion to dismiss. Alternatively, none of the purported pleading defects claimed by Citi cannot be cured through an amendment, and Geske would respectfully request leave to amend Count II.

Date: August 13, 2015

               Respectfully Submitted,

           By: ___s:/Ross M. Zambon____
              **Ross M. Zambon**
              Attorney for Geske

Sulaiman Law Group, Ltd.
Ross M. Zambon (*of counsel*) – ARDC # 6294149
Mohammed O. Badwan – ARDC # 6299011
Mara A. Baltabols – ARDC # 6299033
900 Jorie Blvd., Suite 150
Oak Brook, IL 60523


**CERTIFICATE OF SERVICE**

I, Ross M. Zambon, an attorney, certify that on August 13, 2015, I caused the foregoing **Response Brief** to be served upon counsel of record through operation of the Court's Case Management/Electronic Case File (CM/ECF) system.

           /s/ Ross M. Zambon
           -------------------------------------------
           ROSS M. ZAMBON, No. 6294149
           SULAIMAN LAW GROUP, LTD.
           Attorney for Plaintiffs
           900 JORIE BOULEVARD, SUITE 150
           OAK BROOK, ILLINOIS 60523
           (630) 575-8181